ERNEST ROBISON, APPELLEE, V. UNION TRANSFER COMPANY, APPELLANT.

4 N. W. (2d) 558

FILED JUNE 5, 1942. No. 31336..

*Bernard R. Stone* and *George C. Pardee,* for appellant.

*James J. Fitzgerald, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

MESSMORE, J.

This is an action to recover damages for personal injuries sustained by reason of a collision between a Ford truck, which plaintiff was driving, and a tractor and semitrailer truck unit, belonging to the Union Transfer Company and driven by one of its employees. The jury returned a verdict in favor of the plaintiff from which defendant appeals.

The petition charges the driver of defendant's truck with negligence in the following particulars: In operating the truck at an excessive rate of speed; in failing to have it under proper control while negotiating a curve; in operating the truck on the wrong side of the highway and neglecting to turn back to the right side thereof; in failing to keep a proper lookout and to apply his brakes when he knew that

the rate of speed at which he was proceeding would result in an accident; and plaintiff alleges that he was free from any negligence which caused or contributed to the accident. The appropriate provisions of the Iowa statute are set out in the petition. The answer contains a general denial and alleges that the injuries sustained by the plaintiff, if any, were the direct and proximate cause of his own negligence, and not that of the defendant; pleads the same elements of negligence affirmatively as appear in the plaintiff's petition and the proper statutes covering the subject-matter under the Iowa law. The reply is a general denial.

The defendant's truck was approximately eight feet in width. Attached thereto by a sprocket, with a hole in the center through which a holding rod was inserted, was a trailer. The plaintiff was driving a one-and-a-half-ton Ford truck, with a grain body, the truck being about seven and one-half feet in width. The defendant was transporting a load of machinery from Minneapolis to Omaha, weighing from 12,000 to 14,000 pounds; the plaintiff was hauling a load of sweet corn.

Highway No. 188, on which the accident occurred, is a paved highway 20 feet wide. The center line is not marked but is shown in the concrete. The collision occurred approximately one mile west of Lake City, Iowa, opposite a place known as the Wernick Hatchery, into which there is a driveway from the pavement, and the gravel from such driveway was scattered over a part of the pavement. The morning was cloudy, foggy and damp. The point of impact was at the southwest end of a curve. The highway slopes to the southwest; the curve is banked on the north or outside thereof and is approximately one to two feet higher than on the south or inside of the curve. The plaintiff was proceeding northeast slightly uphill at a rate of speed of approximately 35 miles an hour, and as he approached the curve to the right he noticed headlights on a truck coming toward him around the curve at a distance of about 75 yards; the speed of the truck he estimated to be 45 to 50 miles an hour. After he noticed the headlights he kept his

truck close to the shoulder of the pavement on his own right, or south, side. His version of the accident is reflected by the following testimony:

"Well, I saw these lights coming around this curve, and he was cutting deep on the inside. The lights seemed to go over and come back a little bit, and then cut out just a little before they come to me, and they seemed to swing off. I let my eyes from his lights and watched my shoulder, and his lights were so bright I watched the shoulder down there. You can't watch those bright lights when they are approaching you too close; you've got to watch where your truck is on the shoulder." To the question, "What happened then?" the witness answered: "Well, the cab part of the truck passed, and the corner of the body collided, and that's the last I remember until I come to."

Defendant's driver testified that he was proceeding at a speed of 30 to 35 miles an hour, driving on the extreme north edge of the pavement, and as he proceeded around the curve he noticed the plaintiff's truck approaching at a distance of one-eighth to one-quarter of a mile to the southwest. As he was coming out of the curve the approaching truck was entering the curve. He did not judge the speed of the oncoming truck and was unable to tell whether it was on its proper side of the highway. At the time of the collision the witness started to apply the air brakes on his truck. In connection with this, testimony was sought from him to disclose that where the pavement was slippery a sudden application of the brakes would cause the attached trailer to "jackknife" across the road onto the plaintiff's side, presenting a hazard that would contribute to the accident.

The marshal of Lake City, Iowa, who arrived at the scene of the accident shortly thereafter; testified to seeing dirt, glass and pieces of board at the point of impact and on both the north and south side of the center line of the highway. The plaintiff's truck was facing west on the southeast side of the highway, with a part of its right front fender on the edge of the pavement. The defendant's truck was standing at a distance of 300 to 350 feet southwest of the point of

impact, on the left, or north, side of the highway; the trailer part was standing "practically straight" on the highway, but the tractor was facing southwest. At the point of impact the witness noticed tire and skid marks on the south side of the pavement. His version is that when the trucks came together the Ford truck was whirled around, and where the rear wheels went around they left their marks when striking the pavement, and then apparently left the paving and proceeded around the edge of the shoulder or the curb. These marks began three or four feet south of the center on the south, or plaintiff's, side of the highway; they were not continuous; "each wheel would hit as it bounced it around;" the first mark was not more than two feet in length, and as each wheel would hit the pavement it would leave a mark. There were also marks on the north, or defendant's, side of the highway which started two to two and a half feet north of the center line.

There was considerable testimony given by the father and son who operated the hatchery with reference to the tire marks and tire burns, all of which marks appeared on the north side of the highway and none of them on the south side. All of this evidence constitutes an endeavor on the part of defendant and his witnesses to show that the physical facts disclose the accident occurred solely through the plaintiff's negligence, and that at the time of the impact the defendant's truck was being driven with the outside dual wheels on the extreme north side of the pavement, the inside dual wheels two to two and a half feet north of the center of the paving. After the impact the course of the outside dual wheels could be followed for a distance of about 30 feet on the extreme north edge of the pavement, when they started to veer to the left over toward the south side. The inside dual wheels made skid marks two to two and a half feet north of the center of the pavement at the point of impact. The marks of the left dual wheels were traced to the position where the defendant's truck was standing after the accident. Defendant's truck was first struck on the left front fender; then on the left rear wheels, and the

attached trailer was struck on its left front corner. Under the defendant's version of the accident, these facts would definitely place its truck on its own right side of the highway at the time of the collision.

The plaintiff's testimony discloses that there were tire marks on the plaintiff's side of the highway three feet from the center line. The exhibits disclose that defendant's truck was struck a short distance up from the front end of the left fender, tearing the fender and part of the footboard, and showing a decided breaking of the body of the truck on the left side behind and above the cab part. One of the tires on the dual wheels is shown to be completely blown out, with a large hole in its right side near the top; and the other tire flat, with the rim severely twisted. The exhibits further disclose complete demolishment of the left front fender of the Ford truck, loss of the front wheels, later found some distance away astride the center line of the highway, and a large dent in the right front fender, just below the headlight. There was a red paint mark near the top of plaintiff's left front fender, which would indicate that the top of the red trailer had struck that part of plaintiff's truck, ripping off the box on the left side. The evidence clearly indicates that the trucks side-swiped each other.

Without further detailing the evidence, we conclude that it was sufficient to be submitted to the jury on the question of negligence and was not conclusive to the extent of verifying the defendant's version of the accident. The testimony offered with reference to intoxication of plaintiff while driving is wholly insufficient to prove such fact and was properly rejected by the trial court.

Error is predicated on the following instruction, given by the trial court: "Negligence is never presumed, but must be proved. The defendant having alleged, as an affirmative defense, that the plaintiff was guilty of negligence which proximately caused the accident, the burden is upon the defendant to establish by a preponderance of the evidence the negligence of the plaintiff, and that such negligence was the proximate cause of a contributing cause of the accident."

Other instructions given by the trial court properly placed the burden of proof, under the Iowa law, on the plaintiff, in that he must prove that he was free from negligence contributing to the accident. Such burden of proof, under the Iowa law, does not shift to the defendant, but remains always with the plaintiff. The instruction objected to is clearly a misstatement of the Iowa law, which is material to a determination of the case. There is no controversy, on the part of either the plaintiff or the defendant, as to the burden which the plaintiff must bear in a case such as the one at bar.

We conclude, as held in *Chicago, R. I. & P. R. Co. v. Sporer,* 69 Neb. 8, 94 N. W. 991, "Conflicting instructions are erroneous, and one which misstates the law upon a vital issue is not cured by another which states the law correctly."

"Where two conflicting instructions are given on a question, one containing an incorrect, and the other a correct, statement of the law, the latter will not cure the former." *Koehn v. City of Hastings,* 114 Neb. 106, 206 N. W. 19; *Brooks v. Thayer County,* 126 Neb. 610, 254 N. W. 413; *Bohmont v. Moore,* 138 Neb. 784, 295 N. W. 419.

We hold that instruction No. 5 given by the court, under the authorities herein set out, is confusing and prejudicially erroneous.

The verdict of the jury and judgment thereon are reversed and the cause remanded for further proceedings.

REVERSED.