MICHAEL HARSCHE, APPELLEE, v. ANNA CZYZ, ALSO KNOWN AS ANNA CZYZ MISHAK, APPELLANT, IMPLEADED WITH STANLEY MISHAK, APPELLEE.

61 N. W. 2d 265

Filed December 4, 1953. No. 33368.

*Theodore L. Kowalski* and *Norman Denenberg,* for appellant.

*Eugene D. O'Sullivan, Sr., Arthur J. Whalen, Jno. A. McKenzie,* and *Eugene D. O'Sullivan, Jr.,* for appellee.

Heard before SIMMONS, C. J., MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

The plaintiff, Michael Harsche, brought this action at law against Anna Czyz Mishak, defendant, in the district court for Douglas County, charging the defendant with perpetrating a fraud upon him by promising to marry him when in fact she had no intention of doing so, and that the plaintiff, believing the defendant's promises to be true and not false, relied on them to be true and entrusted to the defendant certain money for safekeeping, and in addition spent money on her for wearing apparel

and entertainment. He seeks to recover damages. The case was tried to a jury resulting in a verdict for the plaintiff in the amount of $7,500. The defendant filed a motion for a new trial and an amended motion for a new trial which were overruled. From this order, the defendant appeals to this court.

For convenience we will refer to the parties as they were designated in the district court.

The plaintiff was born in Poland, and came to the United States when he was a little over 17 years of age. At the time of trial he was 57 years of age, and engaged in the occupation of a blacksmith, employed by the Union Pacific Railroad Company in Omaha, which employment he obtained after arriving from Jamaica, New York, after Labor Day in 1946. He was married to his first wife in New York, on June 30, 1918. She died on March 22, 1941. His family consists of three sons and a daughter. In 1937, he was employed in a ship yard in Jersey City, as a blacksmith. This employment continued until he quit and came to Nebraska.

The defendant was from the same town in Poland as the plaintiff's first wife. She met the plaintiff and his wife in New York in 1919, and visited them on occasions. Shortly after the death of the plaintiff's wife in 1941, while visiting with his cousin in Jamaica, New York, the plaintiff again met the defendant. He and his cousin called at her home. During this visit the defendant told the plaintiff that she was sorry for him, that he had a good wife, and for him not to cry, he was still young and could find another woman to marry him as he had a good trade with good wages. She also told the plaintiff' that there was a play at the Polish Home that evening, and induced him to meet her there. At this function there was music and dancing. He took no part in the festivities. She asked him to take her home, which he did not do. Thereafter, either on April or May 27, 1941, he received a letter from the defendant, apparently in response to one he had written, to the effect that she

would meet him under the clock at the railroad station in order to save him a trip. He did meet her as suggested in the letter. There were several letters written by the defendant in evidence that pertain to the parties meeting each other, and disclosing some affection and endearing terms.

The plaintiff further testified that the defendant had asked him to marry her, and later in 1941, he asked her to marry him. Each thought it would be best to wait for a year after the death of the plaintiff's wife. On several occasions when the question arose, the defendant requested the plaintiff to wait until such time as their children required no further parental care. The plaintiff had two sons in military service and the defendant had one son in the service in the Second World War. During this period of time the defendant requested the plaintiff to leave with her certain sums of money for safekeeping, for the purpose of procuring a home after the marriage, and to live in some degree of comfort. The plaintiff kept an account of this money. It appears from his testimony that in 1941, he gave the defendant $1,800, in 1942, $650, and in 1943, a total of $500. In addition thereto, he expended on the defendant for entertainment, clothes, and other items approximately $1,320 over a period of 5½ years.

Plaintiff further testified that the defendant promised to marry him in 1945 and in 1946. Before she married him, she desired to dispose of her home and a grocery business which she had operated from the time of her husband's death. He advised her it would be all right to negotiate the sale.

The defendant made a trip to Omaha to visit her uncle, and at that time wrote a postal card to the plaintiff. Thereafter she informed the plaintiff that they would be married in Omaha, and have a small wedding. The plaintiff had the defendant's address in Omaha. He quit his employment and went to Omaha where the defendant was to meet him at the railroad station. She failed to

do so. He took a taxicab to the address that had been given him. When he arrived there, a Mr. Mishak came to the door. The plaintiff inquired if the defendant lived there, and Mr. Mishak told him that he did not know any such person. The defendant then came out on the porch. Mr. Mishak went back into the house, and defendant closed the door. She told the plaintiff that she was married, and asked him not to destroy her happiness. She told him that she would pay him $3,500. He told her that he had spent three times that amount, and if she would pay that, he would walk out. He testified that was the last conversation he had with the defendant.

With reference to the letters in evidence, written by the defendant to the plaintiff, it is apparent that all of these letters were written in 1941 and 1942, prior to the time the plaintiff moved to Jamaica, New York. The plaintiff testified that the defendant wanted him to live closer to her. The plaintiff asked her on many occasions to marry him. She always wanted to wait. He believed and relied upon her promises to marry him, which she failed and refused to perform.

The defendant testified that she was 55 years of age; that her family consisted of three sons and a daughter; that she first met the plaintiff in Elizabeth, New Jersey, on the street with his wife; that she moved to Jamaica, New York, where she and her husband engaged in the grocery business for 19 years; and that after the death of her husband in 1937, she operated the store, with the help of her children, for 6 years. When the plaintiff called at her house in 1941, he displayed an interest in her. At that time she thought nothing of it, and finally decided to go out with him to ascertain whether or not it would be to her best interest to marry him. She concluded that it would not be to her best interest to marry him. She did go with him for approximately 2 years and 2 months. She sold her business and home in 1943. She told him she was not ready to marry, that she was not

going to marry him or anyone else, and wished that he would go and get himself someone else. That was before she sold the store. She told him the same thing afterward, and did not encourage him to marry her, but told him to leave her alone, to forget about her. Subsequent to selling her store, she did housework for wages. On many occasions the plaintiff came to her home and ate Sunday dinner with her. She denied that plaintiff ever gave her any money to keep for him, that she owed him anything, that he bought her anything such as clothes or shoes, and that she ever promised to repay him $3,500 or any other amount. She also denied his testimony that she returned $120 to him when his daughter was ill, but stated that on occasions she had loaned him money which he paid back. She further testified that she was self-supporting, and that she did not marry Stanley Mishak until September 26, 1946.

Robert Czyz testified that he was the son of the defendant, lived with her in Omaha, and that he was engaged as a florist at Brandeis store. He testified that he had known the plaintiff and saw him around the store in Jamaica, New York, and that the plaintiff came to his mother's house a great many times, even after they had moved from the grocery store. He would come to dinner on Sunday. The plaintiff would happen to drop in, and when the mother of this witness came from church, they would eat dinner. He further testified that nobody would talk to the plaintiff, and many times when he came they would not answer the door, and endeavored to have nothing to do with him nor to answer his telephone calls. On occasions they would muffle the doorbell so that it would not be heard. His mother would ask the plaintiff to leave, and if the plaintiff asked her to marry him she would say that she would not, and would request him to go home.

The defendant, at the time of the trial, had lived in Omaha for about 6 years. Her husband was dismissed as a defendant in this cause.

The defendant filed a motion for a new trial on June 7, 1952, which was within 10 days after the judgment was entered as provided for in section 25-1143, R. R. S. 1943. On June 9, 1952, an amended motion for a new trial was filed. It is the contention of the plaintiff that the new matter set forth in the amended motion for a new trial cannot be considered in this appeal for the reason that it was filed out of time and not within the time specified in the above-cited statute, and is therefore a nullity and of no force or effect. See Frenchman-Cambridge Irr. Dist. v. Ferguson, 154 Neb. 20, 46 N. W. 2d 692.

Section 25-2221, R. R. S. 1943, provides: "The time within which an act is to be done as herein provided, shall be computed by excluding the first day and including the last; if the last day be Sunday, it shall be excluded." The judgment was rendered May 29, 1952, which fell on Thursday. Under the statute above cited, this day would be excluded. June 8, 1952, fell on Sunday, which likewise would be excluded under the above-cited statute. Therefore, the amended motion for a new trial complied with section 25-1143, R. R. S. 1943, and was filed in time. We so hold.

The defendant contends that the trial court erred in failing to instruct the jury on the issue of the statute of limitations pleaded in the defendant's answer. The defendant's answer pleaded the statute of limitations as a defense. The plaintiff contends that the defendant failed to make objection and assign as error in her motion for a new trial that the trial court should have instructed the jury on the statute of limitations. The motion for new trial and the amended motion for new trial were in compliance with section 25-1144, R. R. S. 1943, which provides in part: "It shall be sufficient, however, in assigning the grounds of the motion to assign the same in the language of the statute and without further or other particularity." See, also, McCullough v. Omaha Coliseum Corp., 144 Neb. 92, 12 N. W. 2d 639.

Both the motion for new trial and the amended motion for new trial set forth that the verdict and decision were not sustained by sufficient evidence and were contrary to law, and, in addition thereto, that errors of law, occurred at the trial. We conclude that the motion for new trial and the amended motion for new trial were sufficient to raise the issue contended for by the defendant.

In support of her contention, the defendant cites section 25-207, R. R. S. 1943, which provides in part: "The following actions can only be brought within four years: * * * and (4) an action for relief on the ground of fraud, but the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud * * *."

In this connection, the defendant asserts that the plaintiff's petition is predicated upon fraud perpetrated by the defendant upon the plaintiff by procuring from him certain sums of money for safekeeping and for other purposes, by stating to him that she intended to marry him, promised to do so, and failed to fulfill the promise.

In addition, the defendant relies upon the following evidence. The defendant's testimony is to the effect that she sold her grocery store and house in 1943. She also testified that before she did so, "I told him I'm not ready to marry, I'm not going to marry him or anybody else. I said, 'I wish you would go out and get yourself someone else.'" Further, "After I sold my house I entirely refused to go out with him and have anything to do with him."

The plaintiff takes the position that he did not discover the fraud until he had come to Omaha in September 1946. This action was brought on January 24, 1948.

A review of the instructions discloses that the trial court did not instruct on the issue of the statute of limitations.

This court, on many occasions, has announced the following rule of law: "It is the duty of the court to

instruct on the issues tendered by a defendant in an answer or cross-petition if they are supported by evidence and a failure so to do is prejudicial error." Hamilton v. Omaha & C. B. St. Ry. Co., 152 Neb. 328, 41 N. W. 2d 139.

It is the duty of the trial court, without request, to instruct the jury on each issue presented by the pleadings and supported by evidence. A litigant is entitled to have the jury instructed as to his theory of the case as shown by pleadings and evidence, and a failure to do so is prejudicial. See Krepcik v. Interstate Transit Lines, 154 Neb. 671, 48 N. W. 2d 839. See, also, Borcherding v. Ecklund, 156 Neb. 196, 55 N. W. 2d 643.

Instructions which withdraw from the jury material issues of fact presented by the pleadings and evidence are erroneous. The instructions as a whole omitted a vital issue or withdrew from the jury an issue material to the defense. The answer alleged the cause of action was barred by the statute of limitations. See Nocita v. Guiliano, 130 Neb. 241, 264 N. W. 672.

In the light of the evidence presented in the record and the foregoing authorities, we conclude that the trial court should have presented to the jury the question of fact as to whether or not the plaintiff's action was barred by the statute of limitations. Failure of the trial court to do so constituted prejudicial error.

The defendant predicates error on the part of the trial court in giving instructions Nos. 4 and 5 to the jury.

The defendant's amended motion for a new trial predicated error on the giving of instructions Nos. 4 and 5. The trial court, in instruction No. 4, informed the jury that the burden of proof was upon the plaintiff "to establish, by a preponderance of the evidence, all of the material allegations of his petition not admitted to be true by the answer of the defendant. Therefore, before the plaintiff can recover he must establish, by a preponderance of the evidence:

"1. That the defendant Anna Czyz Mishak made certain promises to the plaintiff concerning marriage to him in the future.

"2. That the said promises were false and fraudulent.

"3. That the defendant Anna Czyz Mishak at the time of making said promises had no intention of fulfilling them.

"4. That the plaintiff relied upon said promises and believed them to be true.

"5. That by reason of said promises the defendant obtained from the plaintiff certain sums of money and things of value, and that the plaintiff expended certain sums of money upon said defendant by way of entertainment and recreation.

"If the plaintiff has established all of the foregoing propositions by a preponderance of the evidence, then your verdict should be for the plaintiff and against the defendant in some amount. If, however, the plaintiff has failed to establish any one of the foregoing propositions by a preponderance of the evidence, then he cannot recover and your verdict should be for the defendant."

In instruction No. 5, the court instructed: "If you find by a preponderance of the evidence that the purpose and intent of the defendant at all times was to defraud the plaintiff by leading him to believe that she would marry him at some future date in order to secure money and things of value from him, then the amount of his recovery will be that amount that you find by a preponderance of the evidence that he gave to the defendant for safekeeping, if any; that amount, if any, that you find by a preponderance of the evidence that he expended upon her for clothing and wearing apparel; and that amount, if any, that you find from a preponderance of the evidence he expended upon her for entertainment and recreation. In addition thereto you should allow the plaintiff a fair and reasonable sum for his mental anguish and humiliation, if any, if you find

this to have been established by a preponderance of the evidence.

"However, if you find from a preponderance of the evidence that the defendant did not intend to defraud the plaintiff, but if you do find that the plaintiff did entrust to the defendant for safekeeping certain sums of money, then you should determine the amount of said money so entrusted, if any, to the defendant by the plaintiff and return a verdict in favor of the plaintiff for that amount.

"If you find for the defendant you will simply say so by your verdict."

The trial court, in instruction No. 4, properly instructed the jury on the burden of proof required of the plaintiff before the plaintiff would be entitled to recover in this action. In the next instruction, No. 5, the trial court told the jury, in effect, that it was not necessary to establish all of the elements as the same appeared in instruction No. 4, and even though some of the elements as set forth in instruction No. 4 were missing, the plaintiff could still recover. We conclude that these instructions were in conflict and would have the effect of confusing and misleading the jury.

"Instructions which state conflicting propositions of law and tend to confuse the jury are erroneous." Sanderson v. Huffman, 132 Neb. 321, 271 N. W. 870. See, also, Bryant v. Modern Woodmen of America, 86 Neb. 372, 125 N. W. 621, 27 L. R. A. N. S. 326.

"An instruction which conflicts with a proposition of law properly and correctly stated in another instruction in the same charge on a vital issue of fact and tends to mislead or confuse the jury in deliberating on conflicting evidence is erroneous and prejudicial." Hief v. Roberts Dairy Co., 138 Neb. 885, 296 N. W. 331. See, also, Robison v. Union Transfer Co., 141 Neb. 574, 4 N. W. 2d 558; Chard v. New York Life Ins. Co., 145 Neb. 429, 16 N. W. 2d 858; Umberger v. Sankey, 151 Neb. 488, 38 N. W. 2d 21.

The trial court committed prejudicial error as contended for by the defendant.

With reference to the measure of damages in a case such as the instant case, the following becomes pertinent.

"The general rule applicable to the measure of damages for fraud is that such an amount should be awarded to plaintiff as will compensate him for the loss occasioned by the fraud, or, as it has been expressed, plaintiff is entitled to recover damages adequate to the injury which he has sustained. Plaintiff can recover the entire amount of his loss occasioned by the fraud, but the recovery must be limited to the actual loss." 37 C. J. S., Fraud, § 142, p. 470.

As a general rule, one injured by the commission of fraud is entitled to recover such damages as will compensate him for the loss or injury actually sustained and place him in the same position that he would have occupied had he not been defrauded. See 24 Am. Jur., Fraud and Deceit, § 217, p. 47. See, also, Campbell v. C & C Motor Co., 146 Neb. 721, 21 N. W. 2d 427; Jakway v. Proudfit, 76 Neb. 62, 106 N. W. 1039.

The petition, when filed, contained an allegation with reference to mental anguish and humiliation suffered by the plaintiff by reason of the conduct of the defendant on and after September 5, 1946, because of fraud which the defendant had perpetrated against him in not keeping her promise to marry him. On motion, this allegation was stricken from the petition. At the conclusion of the trial, upon request of counsel for the plaintiff, the petition was amended to include recovery for mental anguish and humiliation. In instruction No. 5, the trial court informed the jury that in addition to other elements of damage, the jury should allow the plaintiff a fair and reasonable sum for his mental anguish and humiliation, if any.

In an action for a breach of promise of marriage, the following rule as to the recovery of damages is pertinent: In awarding compensatory damages the jury may con-

sider the injury to the plaintiff's health, the effect of the breach on the plaintiff's feelings, mental suffering, wounded pride, humiliation, pain, and mortification. See 8 Am. Jur., Breach of Promise of Marriage, § 26, p. 866. See, also, 11 C. J. S., Breach of Marriage Promise, § 40, p. 809.

We have previously in this opinion set forth the measure of damages in cases of fraud. As we view the instant case and the theory on which it was tried, it is not a breach of promise of marriage action, but is an action in fraud as heretofore indicated, and an instruction which permits recovery for mental anguish and humiliation constitutes prejudicial error.

The trial court should instruct the jury on the proper measure of damages, and failure to do so is error. See, Hickman-Williams Agency v. Haney, 152 Neb. 219, 40 N. W. 2d 813; Omaha Coal, Coke & Lime Co. v. Fay, 37 Neb. 68, 55 N. W. 211; 64 C. J., Trial, § 557, p. 624.

The defendant contends that instruction No. 1, presenting the issues to the jury, was in effect copying the pleadings, and that the instruction should be a simple and concise summary of the proceedings, citing cases to such effect. Inasmuch as a new trial must be had in this case, we deem a discussion of this contention unnecessary. Also, for the same reason, other assignments of error need not be discussed.

For the reasons given in this opinion, the verdict of the jury and the judgment entered thereon is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.

CARTER, J., participating on briefs.