HUDSON & HUDSON REALTORS et al., Appellants,

v.

Jimmie E. SAVAGE et ux., Appellees.

No. 975.

Court of Civil Appeals of Texas, Tyler.

Dec. 23, 1976.

Rehearing Denied Jan. 27, 1977.

William M. Rippey, James K. Peden, III, Strasburger, Price, Kelton, Martin & Unis, Dallas, for appellants.

Roger D. Sanders, Jarvis, Grisham, Sanders & Emerson, Sherman, for appellees.

DUNAGAN, Chief Justice.

This is an appeal from an order overruling appellants' pleas of privilege. This suit was instituted by the appellees in the District Court of Grayson County, Texas, against Hudson & Hudson, Realtors, James S. Hudson, Alex D. Hudson, Jr., Daniel G. Little and R. Scott Stone, appellants. Additional defendants are Aldridge-Pinnell Realtors, A. Ben Pinnell, Jr. and James Aldridge who are not involved in this appeal. The suit grew out of a real estate transaction involving property in Grayson County and is one for damages allegedly resulting from alleged fraud, misrepresentation, deception and breach of fiduciary obligation in the course of the transaction.

Appellants, being five of the eight defendants, each filed a plea of privilege seeking transfer of the case to Dallas County, Texas, the residence of all appellants. From the court's order overruling said pleas of privilege, this appeal was duly perfected.

Jimmie E. Savage and his wife, Betty L. Savage, reside in Grayson County, Texas,

on a 400-acre tract of land. The Savages, appellees, engaged the services of Aldridge-Pinnell Realtors through a verbal exclusive listing agreement whereby Aldridge-Pinnell would attempt to sell the 400-acre tract of land for a 6% commission. A short time later Aldridge-Pinnell was contacted by Hudson & Hudson Realtors about a possible purchase of the property. There is evidence that Hudson & Hudson had no purchaser in mind, but that the company was contemplating purchasing the land for resale when another purchaser could be found, and, as such, it was a speculative-type venture.

A short time later a contract was submitted to the Savages on behalf of "David G. Little, Trustee, and/or assigns." This was the first of two contracts. Mr. Ed Gillespie, an attorney employed by the Savages to represent them, then negotiated a final contract ultimately signed by all parties on June 7, 1973. The final contract was signed by the Savages as sellers, David G. Little, Trustee and/or assigns, as purchaser, Frank M. Aldridge, Jr., on behalf of Aldridge-Pinnell Realtors as principal agent, and R. Scott Stone on behalf of Hudson & Hudson Realtors as cooperating agent. David G. Little testified that customarily a cooperating agent is "where we would share in the commission of the principal agent, whereby we would represent the purchaser and they would represent the seller."

The contract of sale provided for a purchase price of $700,000.00. There was placed in escrow $10,000.00, which, at the time of closing, would be applied to the required cash down payment of $70,000.00. The balance of the purchase price was to be in the form of a $630,000.00 promissory note for a term of 15 years bearing interest at a rate of 7½% per annum from the date of closing. The note would provide for annual payments of interest only in advance for the first eight years of the note, with the first annual payment being due at the time of closing. The principal of the note was to be repaid in seven annual installments, the first installment being due October 1, 1981.

The contract specifically provided that the purchaser would have no personal liability on the note, and that the Savages' only recourse in the event of default would be the exercise of their remedies under the vendor's lien and deed of trust securing the note.

The contract additionally provided that the Savages would pay to the "principal agent" 6% of the total sales price under the contract, with 3% to be paid at the time of closing and the remaining 3% to be paid in three annual installments of $7,000.00 plus 7½% interest. The contract provided that the principal agent could divide the commission with any other licensed brokers, including any cooperating agent named in the contract, but further provided that the Savages would be fully protected by paying all commissions to the principal agent.

According to Scott Stone's explanation of the nature of the transaction between David Little and the Savages, Little, who was a partner in Hudson & Hudson, entered into the contract as "Trustee, and/or assigns" in order to control the property. By putting up $10,000.00 in earnest money, control could be gained of the property in hopes of finding a buyer for the property, either a syndicate or an individual. It was a speculative situation, and if no buyer could be found, the purchaser was prepared to walk away from the contract and forfeit the earnest money. In fact, prior to the closing of the sale from the Savages to Little, Pete Goldman (who allegedly represented a group of purchasers) was found as a purchaser for the property. An agreement was reached for Goldman to purchase the property from Little for $742,000.00. As a part of that agreement, there was a negotiated commission of $42,000.00 to be taken out of the purchase price and split between Hudson & Hudson and Goldman. Additionally, Goldman and Hudson & Hudson agreed to split any commission which Hudson & Hudson received on the sale of the Savage property to David Little. Goldman received a commission because he was actually representing a group which would buy the property from Little.

Closings of the Savage-Little and Little-Goldman transactions occurred in Gillespie's office on the same day, October 5, 1973. Present at the closing were Scott Stone, David Little, the Savages, James Aldridge, Mr. Gillespie, and Mr. Copley (not elsewhere identified in the record). At the time of the closing the Savages received a $70,000.00 down payment, a note for $630,000.00 as provided for in the contract, the first year's interest payment of $47,250.00, and additionally executed as lessees a lease on the property for $2,000.00 per year as provided for in the contract of sale. The Savages were aware that the note they were taking imposed no personal liability on the purchasers of the property, and were aware that the purchasers could at any time deed the property back to the Savages.

As mentioned previously, the transaction whereby David Little, Trustee, conveyed the property to Goldman was closed on the same day that the Savage-Little conveyance was closed. A split of the commission which the Savages were to pay was arranged between Aldridge-Pinnell and Hudson & Hudson whereby Aldridge-Pinnell, Hudson & Hudson and Goldman shared in the commission paid by the Savages. At the time of the closing of the Savage-Little deal, the Savages were not aware that Goldman would receive a portion of the commission paid by them. Goldman purchased the land from David Little for $42,000.00 more than the Savages received from David Little.

By October, 1974, when the second interest payment to the Savages became due, and, presumably when the second interest payment from the Goldman group to Little as trustee became due, property values in Grayson County had sharply declined. Since cheaper property existed in the same area, the interest payments were not made. Thereafter there were foreclosures on the property, and it was deeded back to the Savages by the Goldman purchasers.

Aldridge-Pinnell Realtors was the principal agent, representing the Savages as sellers pursuant to their oral exclusive listing agreement. David Little was a partner in Hudson & Hudson, a fact known to Frank and James Aldridge. His relationship to the Savages was that as purchaser in the capacity of "Trustee and/or assigns." Scott Stone, on behalf of Hudson & Hudson Realtors, was the cooperating agent representing Little as purchaser. Stone and Hudson & Hudson are conceded to have been the cooperating broker in the Savages' pleadings and were identified as such to the Savages by the Aldridges. The uncontroverted testimony is that, as cooperating agent, Hudson & Hudson represented the purchaser in the transaction. Equally uncontested is the fact that there was no contact between Hudson & Hudson, Alex Hudson, James Hudson, Scott Stone or David Little and the Savages prior to closing of the transaction, and no representations were ever made by the appellants to the Savages at any time.

Appellees in their first amended controverting affidavit defended venue in Grayson County under subdivisions 4, 5, 7, 23 and 29a, Art. 1995, Tex.Rev.Civ.Stat.Ann. and also under Art. 17.56, Tex.Bus. & Comm.Code Ann. (Deceptive Trade Practices—Consumer Protection Act).

The order overruling the plea of privilege did not specify the basis for holding venue in Grayson County. Appellants through its points of error therefore covered all of the appellees' basis for venue as alleged in the controverting affidavit. The appellees' brief presents counterpoints contesting all of appellees' points of error. However, in their argument appellees in their briefs only defended venue under subdivisions 4, 23 and 29a, Art. 1995, V.A.T.C.S., and Art. 17.55, Tex.Bus. & Comm.Code Ann., and do not offer support for maintaining venue under subdivisions 5 and 7, Art. 1995, although they state that they "do not concede the same." We will, however, discuss the application of subdivision 7 of Art. 1995 to the case as reflected by the record before us.

The Savages contended that the situation and alignment of parties was misrepresented to them, and that through fraud and

misrepresentation there was a breach of fiduciary duty.

Mrs. Savage testified that prior to the signing of the contract of sale on June 7, 1973, she and her husband engaged the services of Mr. Ed Gillespie, an attorney, who looked after their interest and helped negotiate the sale prior to the signing of the contract of sale; that the contract of sale was signed in his office; that he continued to represent them from June 7, 1973, up until October 5, 1973, when the closing was held; and that he represented the Savages at the closing of the transaction. She also gave the following testimony:

"Q. And Mr. Savage could have asked questions of anybody in that room if he had so desired. Isn't that correct?

"A. Yes.

"Q. Did he ask at that closing, before these papers were signed who these people were that were sitting across the table from him?

"A. No."

In order to establish venue under subdivision 7, Art. 1995, it is necessary to establish by a preponderance of the evidence all elements of an actionable fraud committed by the party asserting the plea of privilege, including a showing of actual damages. *Coalson v. Holmes*, 111 Tex. 502, 240 S.W. 896 (1922); *Safeway Stores, Inc. v. Amburn*, 380 S.W.2d 727 (Tex.Civ.App.— Fort Worth 1964, writ dism'd w. o. j.); *Sanders v. Select Insurance Co.*, 406 S.W.2d 937 (Tex.Civ.App.—Dallas 1966, n. w. h.); *Guerra v. Texas Employers Insurance Assn.*, 480 S.W.2d 769 (Tex.Civ.App.—Corpus Christi 1972, n. w. h.).

Similarly, under subdivision 23, Article 1995, it is necessary to establish by a preponderance of the evidence all elements of the cause of action being asserted against the party as to which venue is alleged. This is true whether the party is asserting venue based upon a cause of action arising in the county of suit, *Victoria Bank & Trust Co. v. Monteith*, 138 Tex. 216, 158 S.W.2d 63 (1941); *Lloyds Casualty Insurer v. McCrary* 149 Tex. 172, 229 S.W.2d

605 (1950), or the presence of an agent or representative in the county of suit. *Texas Auto Services, Inc. v. Kemp*, 478 S.W.2d 646 (Tex.Civ.App.—Austin 1972, n. w. h.); *Paris Milling Co. v. Wooldridge*, 473 S.W.2d 224 (Tex.Civ.App.—Amarillo 1971, no writ); *Lary v. American Indemnity Co.*, 297 S.W.2d 357 (Tex.Civ.App.—Dallas 1956, n. w. h.).

The elements of actual fraud were outlined in *Moore & Moore Drilling Co. v. White*, 345 S.W.2d 550, 555 (Tex.Civ.App.— Dallas 1961, writ ref'd n. r. e.);

"Actionable fraud has certain fundamental characteristics; (1) there must be a misrepresentation as to material facts, either positive untrue statements, or concealment or failure to disclose facts within the knowledge of the parties sought to be charged, and as to which the law imposed upon such party a duty to disclose; (2) the complaining party must be shown to have relied upon the alleged misrepresentation to his damages; and (3) the complaining party must, himself, not have failed to exercise reasonable care to protect himself . . . ."

It seems from the testimony presented that the transaction out of which this lawsuit arose cannot be said to be an uncommon real estate transaction. There is no evidence of probative force that the transaction involved fraud on the part of any party to it. Appellants as either purchaser or agent for the purchaser were under no obligation to make any disclosure to the Savages. Further, all facts material to the transaction were clearly disclosed in the contract of sale executed by the parties. *Hawkins v. Campbell*, 226 S.W.2d 891 (Tex. Civ.App.—San Antonio 1950, writ ref'd n. r. e.), which we think is very similar to the case at bar, supports the appellants' contention that no fraudulent conduct has been established by the evidence.

If the evidence did show that there had been fraud with respect to the Savages, the Savages incurred no damages as a result. Only Mrs. Savage provided testimony with regard to damages. According to her testi-

mony, "We could have made sales to other people who perhaps would have been much more solid and who would have continued with the payments." Additionally, "It has been difficult for us financially, and it has been difficult for both of our nerves and health."

■ This is the only evidence with regard to damages in the record; and no damages of the type described are recoverable in an action for fraud. In an action for fraud damages are limited to the actual loss which is a direct and proximate result of the fraud. Speculative losses and lost profits are not recoverable in such an action. *George v. Hesse*, 100 Tex. 44, 93 S.W. 107 (1906); *Booth v. Coward*, 265 S.W. 1026 (Tex.Com.App.1924, jdgmt. adopted). While no Texas case has been found discussing the point, courts in other jurisdictions have consistently held that damages for mental anguish, humiliation, pain and suffering are not recoverable in an action for fraud. *Harsche v. Czyz*, 157 Neb. 699, 61 N.W.2d 265, 272 (1953); *Ellis v. Crockett*, 51 Haw. 45, 451 P.2d 814, 820 (1969); *Newman v. Smith*, 77 Cal. 22, 18 P. 791 (1888); *Chandler v. Ziegler*, 88 Colo. 1, 291 P. 822, 824 (1930); *Aaron v. Hampton Motors, Inc.*, 240 S.C. 26, 124 S.E.2d 585, 591 (1962); *Kantor v. Comet Press Books*, 187 F.Supp. 321, 323 (S.D.N.Y.1960).

■ Remote damages, or those purely conjectural, speculative, or contingent, are too uncertain for ascertainment and cannot be recovered in an action for fraud. *Success Motivation Institute, Inc. v. Lawlis*, 503 S.W.2d 864 (Tex.Civ.App.—Houston [1st Dist.] 1973, writ ref'd n. r. e.).

Under the record there is simply no evidence of any damage or loss incurred by the Savages. To the contrary, the evidence reveals a profit to them in the transaction. At the time of closing, they received a $70,000.00 down payment, plus a year's interest of $47,250.00, and paid out a commission of $21,000.00, for a net cash gain to them of $96,250.00. Slightly more than a year later the land which the Savages conveyed was returned by the purchaser to them. The land having been returned to the Savages, in accordance with the terms and conditions of the note they accepted, it cannot be said that they have incurred any loss as measured by the difference between what they surrendered and what they received.

■ Because there was no evidence to establish fraud on the part of appellants, and because there is no evidence of damages recoverable in an action for fraud, venue as to appellants cannot be sustained under subdivision 7, Article 1995. Nor can venue be sustained as to Hudson & Hudson Realtors under subdivision 23, Article 1995 or as to the remaining appellants under subdivision 29a, Article 1995.

Appellees also contend that venue of this case is established in Grayson County under Sec. 17.56, Tex.Bus. & Comm.Code (Deceptive Trade Practices Act) if they have pleaded a cause of action under the act and that no proof of that cause of action is necessary.

■ The Texarkana Court of Civil Appeals in *Doyle v. Grady*, 543 S.W.2d 893, which opinion was filed by the court on November 16, 1976 (unreported), held that under the venue provision of the Deceptive Trade Practices Act the plaintiff or plaintiffs must follow the general rule and both plead and prove a cause of action to support venue. We are in accord with this decision. Appellees failed to prove a cause of action under the Deceptive Trade Practices Act.

■ It is essential that the application of any exception relied upon must clearly appear in the record. *Goodrich v. Superior Oil Co.*, 150 Tex. 159, 237 S.W.2d 969 (1951).

■ Venue may not be established by implication. *Saigh v. Monteith*, 147 Tex. 341, 215 S.W.2d 610 (1948).

■ It is well settled that in order to overcome the plea of privilege in statutory form, plaintiff must make out a case against the defendant as one of the facts necessary to be established to confer venue in the county where the suit is pending. *Kirby Lumber Corp. v. Treadway*, 382

S.W.2d 316, 319 (Tex.Civ.App.—Beaumont 1964, writ dism'd); *Colman v. H. Dittlinger Roller Mills Co.*, 181 S.W.2d 604, 606 (Tex. Civ.App.—Galveston 1944, n. w. h.); *Taylor v. Whitehead*, 88 S.W.2d 716 (Tex.Civ.App. —Fort Worth 1935, n. w. h.); *Compton v. Elliott*, 126 Tex. 232, 88 S.W.2d 91, 93 (Tex. Com.App.1935, opinion adopted); 60 Tex. Jur.2d Venue secs. 206 & 218.

After a very careful review of all the evidence in this case we have concluded that the appellees have failed to prove a cause of action against appellants under any of their allegations and have failed to allege or prove any resulting damages. Therefore appellees have failed to establish a basis for venue as to appellants in Grayson County, Texas.

Accordingly, we reverse the judgment of the trial court and herein render judgment sustaining the pleas of privilege of the appellants. We order venue as to the appellants only transferred to a District Court in Dallas County, Texas, in accordance with Rule 89, T.R.C.P.

Reversed and rendered with instructions.