Thomas M. WALSH and Jack D. Roberts, Individually and on behalf of themselves and all others similarly situated, Appellees,

v.

INGERSOLL–RAND COMPANY, Appellant.

No. 80–2187.

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1981.

Decided Aug. 17, 1981.

Rehearing Denied Sept. 11, 1981.

Joseph F. Devereux, Jr., argued, St. Louis, Mo., for appellees.

John R. McFarland, argued, Louis F. Bonacorsi, Bruce D. Ryder, Coburn, Croft & Putzell, St. Louis, Mo., for appellant.

Before ROSS and ARNOLD, Circuit Judges, and HANSON, District Judge.*

ROSS, Circuit Judge.

Ingersoll-Rand Company (I–R) appeals from a judgment of the district court[1] based on a jury verdict in favor of plaintiffs Thomas Walsh and Jack Roberts and from an order entered by the trial court denying I–R's motions for judgment notwithstanding the verdict and for a new trial. We reverse and remand for a new trial on the grounds that evidence of humiliation, embarrassment and career disruption was erroneously admitted at trial.

This diversity action arose from the termination by I–R of two employees, Walsh and Roberts, in December of 1978. Walsh and Roberts allege they were fraudulently induced to accept positions with I–R because I–R concealed from them its prior plans to sell the product line on which Walsh and Roberts were to work. I–R denied that any negotiations took place before Walsh and Roberts accepted their positions and asserted that in any case I–R had no duty to disclose such negotiations if they had taken place.

The case was submitted to the jury on September 11, 1980, and a verdict was returned in favor of both plaintiffs. The jury awarded Thomas Walsh actual damages of $35,000 and punitive damages of $15,000 and Jack Roberts actual damages of $55,000 and punitive damages of $15,000. The district court entered judgment in accordance with the jury's verdict on September 12, 1980.

I–R filed a motion for judgment notwithstanding the verdict and in the alternative a motion for a new trial. The district court, on November 20, 1980, filed a memorandum opinion and order denying both motions.

*I. Background*

Roberts began work for I–R in St. Louis on July 1, 1978, as a hoist salesman and during the first week of August of that year accepted a transfer to Dallas. Roberts began making weekly trips to Dallas in the

---

* The Honorable William C. Hanson, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

1. The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri.

middle of August and moved to Dallas on October 17, 1978. Walsh accepted a position as a hoist salesman with I–R in St. Louis during the second week in August and began work for I–R on September 11, 1978.

On August 9, 1978, the chairman of the board of the Harnischfeger Corporation (P&H) contacted the chairman of the board of I–R by telephone to set up a meeting on August 18, 1978, to discuss existing business relations between the two companies and the possibility of P&H purchasing I–R's hoist product line. In a letter dated August 15, 1978, the chairman of P&H confirmed the meeting date and stated that P&H might be interested in buying for cash I–R's "entire electric and air hoist product lines, including management, engineering and manufacturing capabilities."

Vice-chairman Garfield of I–R met with the chairman of P&H on August 18 to discuss the purchase by P&H of I–R's hoist line. On August 31 I–R began an examination of its hoist business to determine whether it was in a position to sell the product line. Discussions between the two companies continued and on October 6, I–R executive vice president Mackie sent a memo to I–R's president recommending that I–R sell the hoist line and requesting authority to discontinue the product line and to negotiate a sale to P&H. On October 9, I–R's president gave Mackie permission to "proceed with negotiations to divest of our electric hoist business." Discussions regarding price and sales terms commenced the next day and on October 31 the companies executed a nonbinding letter of intent to transact the sale. The board of directors of I–R authorized the sale on November 1 and a final agreement was signed by the two companies on December 20, 1978. Rob-

erts and Walsh learned of the negotiations for sale of the hoist product line in November of 1978 and received notification of their termination in early December, effective December 31, 1978.

I–R urged in its motions and urges now on appeal that: (1) the evidence failed to establish a submissible case of fraudulent concealment; (2) the district court erred in admitting into evidence testimony concerning embarrassment, humiliation and career disruption; and (3) the district court erroneously instructed the jury as to the measure of damages. We address these contentions below.

## II. Sufficiency of the Evidence

I–R contends that the evidence was not sufficient to prove each of the essential elements of fraud [2] because plaintiffs failed to prove that I–R had any duty to disclose the negotiations. In Missouri, a failure to disclose a material fact is considered to be "an implicit representation of the nonexistence of such fact on which a party may rely, but only if the alleged fraudfeasor has a duty to speak." *McMahon v. Meredith Corp.*, 595 F.2d 433, 438 (8th Cir. 1979). Therefore, in a fraudulent concealment case the plaintiff must prove a failure to disclose a material fact and a duty to disclose such fact.[3] *See Slater v. KFC Corp.*, 621 F.2d 932, 936 (8th Cir. 1980).

The duty to disclose may arise under any of the following conditions: (1) where there is a relationship of confidence between the parties; (2) where there is an inequality of condition between the parties; or (3) where one party has superior knowledge not within the fair and reasonable reach of the other party. *McMahon v. Meredith Corp., supra*, 595 F.2d at 439. On a motion for judgment n.o.v. the reviewing

---

**2.** The elements of common law fraud are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) the hearer's consequent and proximate dam-

age. *Slater v. KFC Corp.*, 621 F.2d 932, 936 (8th Cir. 1980); *Beshears v. S–H–S Motor Sales Corp.*, 433 S.W.2d 66, 70 (Mo.App.1968).

**3.** In addition to proving a duty and failure to disclose, plaintiff, in a fraudulent concealment case, must prove elements three through nine of common law fraud. *See Slater v. KFC Corp., supra*, 621 F.2d at 936.

court does not substitute its own judgment of the facts. The court determines by weighing the evidence in the light most favorable to the jury verdict, whether there is substantial evidence to support that verdict. *Cleverly v. Western Electric Co.*, 594 F.2d 638, 641 (8th Cir. 1979). In ruling on defendant's motions for judgment n.o.v. and new trial, the trial court determined that there was sufficient evidence that I–R had superior knowledge not within the fair and reasonable reach of the plaintiffs to support submission of the claim of fraud to the jury and to support the jury's verdict. We agree.

In its memorandum and order dated November 20, 1980, denying I–R's motions for judgment n.o.v. and new trial, the district court stated that "the determination of the existence of a duty to disclose is properly a question for the jury." The trial court correctly relied on *Slater v. KFC Corp.* where this court upheld the denial of defendant's motion for judgment n.o.v.[4] because based on the evidence "the jury could have determined that, as to the undisclosed information, [defendant] possessed superior knowledge of a material fact not within the fair and reasonable reach of [plaintiff]." *Slater v. KFC Corp., supra*, 621 F.2d at 937.

Our view of the record indicates that sufficient evidence was introduced at trial for the jury to find that: (1) negotiations for the sale of the hoist product line commenced prior to the time Walsh commenced working for I–R and before Roberts was transferred to Dallas; (2) I–R, by keeping the negotiations confidential, intended to deceive Walsh and Roberts about the future of the hoist product line; (3) I–R had superior knowledge of the negotiations which gave rise to a duty to disclose; and (4) Walsh and Roberts suffered some amount of damages due to I–R's fraudulent concealment. Accordingly, we hold that I–R was not entitled to a judgment n.o.v. or a new trial based on the sufficiency of the evidence.

---

4. The court reversed and remanded the case for a new trial because of erroneous jury instructions.

### III. Admissibility of Evidence of Humiliation, Embarrassment and Career Disruption

I–R argues that evidence of humiliation, embarrassment and career disruption should not have been admitted at trial because damages for emotional harm are not recoverable in actions for fraud. The attention of this court has not been directed to any Missouri case deciding whether damages are allowed for emotional harm in fraud cases; however, the general rule is that fraud is an economic tort and thus protects only pecuniary losses. Restatement (Second) of Torts § 549 (1977); *Harsche v. Czyz*, 157 Neb. 699, 61 N.W.2d 265, 272 (1953); Dobbs, Remedies, Fraud and Deceit § 9.2 (1973).

The Supreme Court of Nebraska in *Harsche v. Czyz, supra*, 157 Neb. 699, 61 N.W.2d at 272, held that

> The general rule applicable to the measure of damages for fraud is that such an amount should be awarded to plaintiff as will compensate him for the loss occasioned by the fraud * * *. Plaintiff can recover the entire amount of his loss occasioned by the fraud, but the recovery must be limited to the actual loss.

(Citation omitted). The *Harsche* court held that in an action in fraud plaintiff is not entitled to recover for mental anguish and humiliation. *Accord, Hudson & Hudson Realtors v. Savage*, 545 S.W.2d 863, 868 (Tex. Civ.App.1977), citing *Ellis v. Crockett*, 51 Haw. 45, 451 P.2d 814, 820 (1969); *Newman v. Smith*, 77 Cal. 22, 18 P. 791 (1888); *Chandler v. Ziegler*, 88 Colo. 1, 291 P. 822, 824 (1930); *Aaron v. Hampton Motors, Inc.*, 240 S.C. 26, 124 S.E.2d 585, 591 (1962); *Kantor v. Comet Press Books*, 187 F.Supp. 321, 323 (S.D.N.Y.1960); *see also* Restatement (Second) of Torts § 47 (1965).

The Restatement (Second) of Torts § 549 states that "[t]he recipient of a fraudulent misrepresentation is entitled to recov-

er as damages in an action of deceit against the maker the *pecuniary loss* to him of which the misrepresentation is a legal cause * * *." (Emphasis added.) In addition, according to that section, the recipient is entitled to "additional damages sufficient to give him the benefit of his contract * * *." This court agrees with the rule that damages for emotional harm are not recoverable in actions in fraud. This rule is consistent with Missouri cases which have held that no recovery is allowed for mental suffering in fraud cases, absent physical injury, unless the tortfeasor acted willfully or maliciously. *Jurcich v. General Motors Corp.*, 539 S.W.2d 595, 601 (Mo.App.1976). To the extent humiliation, embarrassment and career disruption are equivalent to emotional harm,[5] evidence pertaining to such damages was erroneously admitted by the trial court.

### IV. Jury Instructions

#### A. Benefit of the Bargain Rule

The district court instructed the jury as follows:

> If you find in favor of the Plaintiff Jack Roberts, then you must award Plaintiff such sum as you believe was the *difference between the actual value of the employment relationship on the date Plaintiff agreed to accept a transfer to Dallas*[6] *and what its value would have been on that date, had Defendant disclosed the negotiations with Harnischfeger Corporation.*

(Emphasis added.) I–R objects to this instruction on the ground that it misstates the rule of damages applicable to this case.

Under Missouri law the benefit of the bargain rule expresses the proper measure of damages in fraud cases. *Slater v. KFC Corp., supra*, 621 F.2d at 937; *Smith v. Tracy*, 372 S.W.2d 925, 938 (Mo.1963). The benefit of the bargain is the "difference between the actual value of the property[7] and what its value would have been if it had been as represented." *Smith v. Tracy, supra*, 372 S.W.2d at 938.

In a fraudulent concealment case the failure to disclose a material fact is considered an implicit representation that the fact does not exist. *McMahon v. Meredith Corp., supra*, 595 F.2d at 438–39. Thus, the employment relationship was represented to be free of any negotiations for sale of the hoist product line. The jury should have been instructed that the correct measure of damages is the difference between the actual value of the employment relationship on the relevant dates[8] and the value of the employment relationship had there been no negotiations with Harnischfeger Corporation. This statement of the benefit of the bargain rule focuses on the value of the employment with and without the negotiations rather than its value with and without disclosure.[9]

I–R further argues that no instruction should have been given which incorporates a measure of damages based on the value of the employment relationship because the

---

**5.** We do not find in the record nor did plaintiffs' counsel make at oral argument a significant distinction between humiliation, embarrassment and career disruption and emotional harm.

**6.** Instruction 17 states the same rule with respect to Thomas Walsh and here substitutes the words "accepted employment" for "agreed to accept a transfer to Dallas."

**7.** The "property" in this case is the employment relationship.

**8.** The relevant dates are the date Jack Roberts accepted the transfer to Dallas and the date Thomas Walsh accepted employment.

**9.** On the particular facts of this case, considering the subjective states of minds of these plaintiffs, we are not convinced that there is any practical difference between the jury instructions given and those which should have been given. The fact that the negotiations were not disclosed to the plaintiffs meant they assumed no negotiations were in progress. Thus, whether the negotiations existed but were not disclosed or never existed makes little difference to the plaintiffs in their decisions to accept positions with I–R. However, on remand of this case, the trial court should instruct the jury that the correct measure of damages is the difference between the actual value of the employment relationship and its value had there been no negotiations.

value of the relationship could not be determined without speculation. Roberts and Walsh had employment contracts which were terminable at any time by either employer or employee so Roberts and Walsh had no right to future earnings.

■ It is the general rule that the value of the loss of future wages cannot be formed from speculation and conjecture. *Sampson v. Missouri Pacific R. Co.*, 560 S.W.2d 573, 589 (Mo.1978). However, plaintiffs should be allowed to introduce whatever evidence they can to prove the value of the employment relationship and it is the duty of the jury to determine whether there is sufficient evidence of damages. *Espaillat v. Berlitz Schools of Languages of America, Inc.*, 383 F.2d 220, 222–23 (D.C. Cir. 1967); *Gerich v. General Motors Corp.*, 588 S.W.2d 107, 116 (Mo.App.1979).

### B. Punitive Damages

The district court instructed the jury that punitive damages could be awarded the plaintiffs if the defendant's conduct was found to be willful, wanton or malicious. Defendant objects to this instruction on the ground that Roberts and Walsh failed to prove that they sustained actual damages and without evidence of actual damages, there can be no award of punitive damages. *Compton v. Williams Bros. Pipeline Co.*, 499 S.W.2d 795, 797 (Mo.1973); *O'Shaughnessy v. Ward Aircraft Sales & Service*, 552 S.W.2d 730, 736 (Mo.App.1977).

■ The rule stated in *Compton* is the general rule of punitive damages in Missouri. We are convinced that Roberts and Walsh made a showing of actual damages sufficient to warrant instruction of the jury on punitive damages. This court has previously held that "[t]he question of whether or not punitive damages shall be awarded and, if so, in what amount rests peculiarly in the discretion of the jury." *Fong v. Town & Country Estates, Inc.*, 600 F.2d 179, 183 (8th Cir.), *cert. denied*, 444 U.S. 942, 100 S.Ct. 298, 62 L.Ed.2d 309 (1979); *accord, Northern v. McGraw-Edison Co.*, 542 F.2d 1336, 1349–50 (8th Cir. 1976), *cert. denied*, 429 U.S. 1097, 97 S.Ct. 1115, 51 L.Ed.2d 544 (1977).

### V. Conclusion

We remand for a new trial on the grounds that evidence pertaining to humiliation, embarrassment and career disruption should not have been admitted. The trial court may, in its discretion, limit the new trial to the question of damages by instructing the jury that liability of the defendant for actual damages has been established. The jury may then redetermine the amount of actual damages and the amount of punitive damages, if any, to which plaintiffs are entitled.