**SHRINERS HOSPITALS FOR CRIPPLED CHILDREN, INC., A Colorado Corporation, Appellant, (Plaintiff),**

v.

**FIRST SECURITY BANK OF UTAH, N.A., a Utah Corporation, in its capacity as Co–Personal Representative of the Velma Rife Jones Estate and in its corporate capacity; First Security Bank of Rock Springs, a Wyoming Corporation, in its corporate capacity, Appellees (Defendants).**

No. 91–207.

Supreme Court of Wyoming.

July 28, 1992.

Robert James Wyatt of Burgess, Davis, Carmichael & Cannon, Cheyenne, David H. Carmichael and Kate M. Fox of Burgess, Davis, Carmichael & Cannon, Sheridan, Edward F. Ruberry (argued), and Darcy L. Ibach of Bollinger, Ruberry & Garvey, Chicago, Ill., for appellant.

Randall N. Skanchy (argued), and Andrew H. Stone of Jones, Waldo, Holbrook & McDonough, Salt Lake City, Utah, and David E. Arnold of Scorsine Law Office, Rock Springs, for appellees First Sec. Bank of Utah, N.A. and First Sec. Bank of Rock Springs.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

CARDINE, Justice.

Appellant Shriners Hospitals for Crippled Children, Inc. (Shriners) appeals the trial court's dismissal of its second amended complaint. The complaint arose out of the sale of the Rife Ranch by the co-personal representatives of the Velma Rife Jones Estate (Estate). Shriners alleges against First Security Bank of Utah, N.A., and First Security Bank of Rock Springs (Banks), the co-personal representatives, claims of fiduciary negligence and breach of fiduciary duty, civil conspiracy, and fraud.

We reverse the trial court's order dismissing Shriners' complaint, and remand for further proceedings.

Shriners states the issues on appeal as follows:

1. Whether the Complaint, as amended by the Appellant, states a claim for relief from alleged fiduciary negligence and breach of fiduciary duties under the notice pleading standards of Wyoming Rules of Civil Procedure, Rule 8(a), (e), and (f).

2. Whether the Complaint, as amended by the Appellant, states a claim for relief from civil conspiracy under the notice pleading standards of Wyoming Rules of Civil Procedure, Rule 8(a), (e), and (f).

3. Whether the Complaint, as amended by the Appellant, states a claim for relief from fraud under the notice pleading, with circumstances particularity, standard of Wyoming Rules of Civil Procedure, Rule 8(a), (e), and (f) and Rule 9(b).

Banks present the following additional issues for our review:

1. Whether the district court's order should be treated as an order granting summary judgment, based on its consideration of evidentiary matter outside the pleadings.

2. Whether the district court properly granted summary judgment against plaintiff and in favor of defendants on each of plaintiff's claims.

Because we hold that Shriners must be given additional time to conduct discovery in order to respond to the converted summary judgment motion, it is not necessary to consider the substantive issues raised by the parties.

This is the second time a case involving these parties and the sale of the Rife Ranch has been before this court. In *Matter of Estate of Jones*, 770 P.2d 1100, *modified on denial of reh'g* 782 P.2d 229 (Wyo. 1989), *cert. denied sub nom. Shriners Hospitals for Crippled Children v. First Security Bank of Utah, N.A.*, 496 U.S. 905, 110 S.Ct. 2587, 110 L.Ed.2d 268 (1990), we considered Shriners' motion, filed in the Wyoming ancillary probate of Velma Rife Jones' estate, to set aside the sale of the Rife Ranch. Shriners claimed the sale should be set aside because the Banks had failed to give Shriners notice of the petition for authority to sell the property filed with the probate court. We held that Shriners

was a contingent beneficiary under the trust, but not a "beneficiary named in the will" entitled to notice of the proposed sale of the Rife Ranch. *Estate of Jones*, at 1103.

After the United States Supreme Court denied Shriners' petition for certiorari from our decision in *Jones*, Shriners filed an independent civil action against appellees seeking damages and an order setting aside the sale of the Rife Ranch. Shriners' complaint incorporated claims of fraud, conspiracy, and breach of fiduciary duty. Shortly thereafter, Shriners amended its complaint to include a claim for RICO conspiracy.

On August 7, 1990, the trial court entered an order dismissing the RICO claim and granting Shriners the opportunity to file a second amended complaint to state with more particularity its claim of fraud. The dismissal of the RICO claim is not presented to us as an issue on appeal. Thereafter, Banks filed a motion for protective order to prevent Shriners from undertaking further discovery until the second amended complaint was filed. It does not appear that this motion was ever ruled upon.

On November 19, 1990, Shriners filed its second amended complaint. Apparently concerned that its plea of fraud would survive a motion to dismiss, Shriners drafted an extremely detailed complaint. The allegations of the resulting, sometimes rambling and picayune, thirty-eight page document are summarized in a very basic manner in the paragraphs which follow. We have sifted through the mass of information presented to arrive at a basic statement of allegations in support of Shriners' claims.

Shriners is one of two charitable remainder beneficiaries named in a testamentary unitrust contained in the Last Will and Testament of Velma Rife Jones. Banks are co-personal representatives of the will and co-trustees of the unitrust. On or about August 5, 1985, Banks prepared and filed a petition for appointment of conservator for Ms. Jones' estate, in which they stated that the Rife Ranch was worth

$1,250,000.00. First Security Bank, Utah (FSB–UT) then hired Rancher's Management Company, Inc. (Rancher's) to represent them in the management, lease or sale of the Rife Ranch.

On September 2, 1985, Rancher's informed John Lamborn (Lamborn), an employee of FSB–UT, of a number of prospective lessors or purchasers for the Rife Ranch, including prospective lessors John and Brad Smith, who had agreed to pay approximately $98,305.00 per year to lease the property. Lamborn then offered a lease with option to purchase the Ranch to another prospective lessee for less than half of what the Smiths had agreed to pay.

Prior to Ms. Jones' death, she and her husband had relied on John Hay, the president and a director of Rock Springs Grazing Association (RSGA), to assist them in conducting business regarding the Ranch and their shares in RSGA. Hay voted the Jones' shares in RSGA on several occasions. The Rife Ranch telephone was located in Mr. Hay's office in Rock Springs and was used by RSGA for calls of its own and to intercept calls relating to the Rife Ranch.

Hay allegedly encouraged FSB–UT to keep the Jones' shares of RSGA separate from any leasing arrangements for the Rife Ranch. After he found out about the Smith offer, he advised FSB–UT not to allow the Smiths to use the RSGA shares because RSGA did not want the Smith family to gain any more involvement in RSGA. Hay allegedly falsely told FSB–UT that the assignment or use of the RSGA shares would create only a small price differential in the value of the Ranch. Shriners alleges that this misrepresentation caused FSB–UT to undervalue the Rife Ranch.

On September 23, 1985, Ranchers notified Lamborn that the annual rental for the Rife Ranch should be $98,000.00 and that its sales price should be in the range of $1,225,000.00 to $1,400,000.00. On December 12, 1985, the Banks obtained a written appraisal on the Rife Ranch, which stated that the value of the surface estate was $1,200,000.00.

Ranchers told FSB–UT that the fair market value of the Ranch was $5.00 per AUM (animal unit month). FSB–UT then negotiated a lease for a value of $2.07 per AUM. On December 4, 1986, Lamborn told a representative of the lessee of the Rife Ranch that lamb market prices had risen more than 15 percent since the commencement of the lease. The effect of these more favorable market prices was to increase the value of the Rife Ranch.

Ranchers had also told FSB–UT that, in addition to the value of the surface estate, the Ranch was valuable for the fee interests in oil, gas and other minerals appurtenant to it and for potential future income from "surface owners agreements" with Union Pacific Corporation. Shriners alleges that the Joneses historically derived substantial income from such sources.

On January 15, 1986, Lamborn acted as a witness for Ms. Jones' will, in which she created the testamentary unitrust. Ms. Jones died on October 19, 1986. On March 6, 1987, her will was admitted to ancillary probate in Sweetwater County, Wyoming. The Banks were appointed by the Sweetwater County district court to serve as co-personal representatives of the Estate. In their petition for probate of the will dated February 20, 1987, the Banks stated that the estimated value of the property in Wyoming was $1,200,000.00.

On April 30, 1987, Banks entered into an agreement to sell the Rife Ranch for $820,000.00. Banks allegedly did not solicit other offers from the public or engage in any substantial or material negotiations with the purchasers regarding the purchase price or the inclusion of the mineral interests and the RSGA shares in the purchase price. Lamborn communicated with Hay during this time period, which communication was allegedly instrumental in the Banks' filing of their petition for authorization to sell and for confirmation of sale with the trial court.

On May 19, 1987, Banks presented, in the probate action, their Petition for Authority to Sell Real Property and for Confirmation of Sale. Shriners alleges that this petition was fraudulent for the following reasons:

(1) the Banks misstated the need to sell the Rife Ranch in order to provide liquidity to pay debts of the Estate; (2) the Banks did not disclose the disparity between the then-existing appraisal value of $1,200,000.00 and the offering price of $820,000.00 and did not assess the full potential lease, or sale market for the Ranch or disclose the existence of open alternative proposals already communicated to them; (3) the Banks did not disclose to the court that the contemplated sale would not reserve any minerals owned by Velma Rife Jones at her death; (4) the Banks did not disclose that the proposed sale would result in a complete loss of

> anticipated future income that otherwise could accrue to the benefit of, and be payable in an aliquot share, to Plaintiff, if Plaintiff is allowed to receive its one-half share of the Rife Ranch in kind, from existing, or future, surface owners agreements with the real estate and mineral development divisions of the Union Pacific Corporation pertaining to mineral recovery on the so-called "checkerboard" lands being conveyed in the proposed sale, or from trespass fees, or surface damage payments, or other income to be produced by granting temporary use of the surface estate to other parties for the purpose of mineral exploration, for the pipeline or other transport of minerals passed or recovered, or otherwise[;]

(5) the Banks misled the court by alleging that the "ultimate beneficiary" of the Estate had no desire to run the Rife Ranch, when plaintiff had continually expressed its desire to receive its ownership of the property in kind; (6) the Banks did not inform plaintiff of their intent to sell the property and did not inform the court that they had not informed the plaintiff of this intent; (7) the Banks implied that plaintiff had notice of their intent to sell the property by filing with the court waivers of notice from other beneficiaries to the will and from FSB–UT as trustee for the charitable unitrust.

Banks did not file an appraisal of the Rife Ranch with the probate court until approximately three months after the sale, on August 14, 1987. The Banks' appraisal, dated July 9, 1987, shows the value of the surface estate at $925,000.00, but allegedly fails to include the value of the mineral interests or "future income incidences" of the surface estate. Shriners alleges that the Banks' delay in filing the appraisal deprived the probate court and Shriners of the opportunity to evaluate the terms of the resulting sale.

On May 19, 1987, the court entered its order approving the sale of the Rife Ranch to Southern Wyoming Cattle Company (SWCC). That same day, the Banks conveyed title to SWCC. SWCC is a Wyoming joint enterprise. Shriners alleges that SWCC was not a bona fide business entity separate and distinct from its members, but was a "sham" and "mere conduit" formed for the purpose of obfuscating the record title to the Rife Ranch and concealing the identities of the true purchasers.

At the time of her death, Velma Rife Jones owned three shares of RSGA, each of which had a "book value" of approximately $32,000.00. The Ranch purchasers have attributed a value of $50,000.00 each to these shares. Appellant alleges that these shares were the personal property of Velma Rife Jones and could have been sold separately from the Rife Ranch. Appellant claims that the Banks wrongfully failed to inform the court that they intended to transfer the RSGA shares as part of the Rife Ranch transaction. Appellant alleges that there was a separate market and value for the shares at the time the Rife Ranch was sold.

On May 19, 1987, SWCC conveyed its interest in the Rife Ranch to RSGA, Elza L. and Lois M. Eversole (Eversoles), and Lazy VD Land and Livestock (Lazy VD). Appellant states that the sale of the RSGA shares benefitted these purchasers in two ways: first, it made their own holdings more valuable, and second, it furthered the efforts of John Hay to keep the Smiths from acquiring any more interest in RSGA. Appellant also alleges that these subsequent conveyances were part of a scheme by the purchasers to deprive appellant of its interest in the Rife Ranch and to make an *apparent* third-party sale to SWCC rather than to the real purchasers.

Based on these allegations, appellant pleads three causes of action. First, it claims that the Banks conspired to fraudulently induce the court to approve the sale of the Rife Ranch for less than its true value. Second, it claims that the Banks breached their fiduciary duty to Shriners by not communicating with Shriners prior to the sale, and by selling the Ranch for less than its true value. Finally, Shriners claims that the Banks also breached their fiduciary duty by not collecting any consideration for the mineral rights or appurtenant income rights.

The Banks filed an answer which contained a motion to dismiss Shriners' second amended complaint. The parties filed briefs either supporting or opposing the motions to dismiss. In their brief, the Banks included alternate requests that the court either dismiss Shriners' complaint, enter summary judgment for the Banks, or strike portions of the complaint. To this brief, they attached an affidavit by John Lamborn (hereafter called "Lamborn Affidavit") stating, among other things, that at the time of the hearing on the petition to authorize and confirm the sale he had in his possession two appraisals of the Rife Ranch: the original appraisal, which valued the property at $1,200,000.00, and a supplemental appraisal dated February 24, 1987, which valued the property at $925,000.00.

Shriners initially requested the court to set a hearing on the motions to dismiss and for summary judgment. Later, Shriners dropped their request for a hearing and asked the court to rule on the motions based on the written arguments filed in the parties' briefs. In Shriners' brief in opposition to the defendants' motion to dismiss, Shriners requested that the court clarify whether it intended to treat the motion as one for summary judgment, and if so, to grant Shriners a continuance to allow it to take several depositions prior to the court's consideration of the motion for summary judgment. There is no indication in the record that the trial court ever ruled on this request.

On May 30, 1991, the trial court filed its decision letter. The court, *inter alia*, dismissed Shriners' fraud claims for failure to plead fraud with particularity, and also dismissed the remainder of the complaint. An order of dismissal was entered on August 1, 1991. Shriners took timely appeal from this order.

## 12(b)(6) Dismissals

Banks argue that automatic conversion to summary judgment occurred when the Lamborn affidavit was presented to and considered by the trial court in ruling on their motion to dismiss or for summary judgment. Wyoming Rule of Civil Procedure 12(b) governs conversion of a motion to dismiss to one for summary judgment:

> If, on a motion asserting the defense numbered [12(b) ](6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

In *Kimbley v. City of Green River*, 642 P.2d 443, 446 (Wyo.1982), we stated that conversion under Rule 12(b) cannot be accomplished unless the nonmoving party has (1) notice of the court's intent to convert the motion to one for summary judgment, and (2) an opportunity to submit rebuttal materials under Rule 56. We elaborated on the first requirement in *Torrey v. Twiford*, 713 P.2d 1160, 1164 (Wyo.1986). In that case, we said that when affidavits are attached to a motion to dismiss and considered by the trial court, the motion converts automatically to a motion for summary judgment. In such circumstances, the nonmoving party is not entitled to additional notice of the conversion, *unless the record demonstrates unfair or inappropriate surprise. See also e.g., Cranston v. Weston County Weed and Pest Board*, 826 P.2d 251, 254 (Wyo.1992); *Brebaugh v. Hales*, 788 P.2d 1128, 1134 (Wyo.1990); *Mostert v. CBL & Associates*, 741 P.2d 1090, 1096–97 (Wyo.1987). We have also

discussed the second requirement in *Kimbley*, which is that the nonmoving party be granted "reasonable opportunity to present all material made pertinent to such a motion." W.R.C.P. 12(b). This means, at a minimum, that the nonmovant must have ten days to respond to the converted motion prior to any hearing on it. *Torrey*, at 1165; *see also* W.R.C.P. 56.

■ On the surface, the Banks' motion here fulfilled the technical requisites for automatic conversion. The Lamborn Affidavit was both submitted to and considered by the court. We are unable to accept Shriners' claim that the affidavit was somehow incompetent. The affidavit and attachments assisted the court in arriving at two of its conclusions: (1) that the probate court was apprised of the existence of the appraisals, the interests to be sold, and the value of the Ranch; and (2) that the sale price was reasonable. Furthermore, more than ten days elapsed between the time the Banks filed their motion and the court ruled on it. We must also note that even though the trial court entered an order of dismissal rather than an order for summary judgment, this did not prevent conversion from occurring. *See e.g.*, *Greaser v. Williams*, 703 P.2d 327, 336 n. 4 (Wyo. 1985).

■ However, under the circumstances, we must hold that if summary judgment was entered, it was improvidently entered. The record demonstrates that Shriners had neither notice of the trial court's intent to convert nor a reasonable opportunity to submit materials in response to a summary judgment motion. Shriners was "unfair[ly] or inappropriate[ly] surprised" when the court considered the Lamborn Affidavit, thus triggering automatic conversion, without having responded to Shriners' request for clarification as to whether conversion had occurred. Furthermore, the confusion created by the court's failure to respond, coupled with its refusal to grant more time for discovery, prevented Shriners from having a "reasonable opportunity" to respond to the motion.

The record shows how Shriners was deprived of notice and an opportunity to respond. Prior to the filing of Shriners' second amended complaint, on August 29, 1990, the Banks filed a motion for protective order, requesting that Shriners not be allowed to complete any more discovery until the second amended complaint was filed. Shriners had completed written discovery but had not taken depositions at that point. A hearing was set on the protective order for September 7, 1990; however, it does not appear that this hearing was ever held. Shriners later informed the court that the depositions had been rescheduled by stipulation for the week of November 5, 1990. The depositions were never completed; the Banks filed their answer and motion to dismiss one month later, on December 17, 1990.

Shriners was not on notice that conversion was sought and thus immediate further discovery would be needed to respond in summary judgment posture until January 29, 1991, when Banks submitted their memorandum in support of dismissal *or* summary judgment, with the Lamborn Affidavit attached. Prior to that time, Shriners could reasonably have concluded that only a motion to dismiss was before the court. Even after the memorandum was filed, Shriners would have noted that it was phrased in the alternative, as supporting *either* a motion to dismiss or a motion for summary judgment. It was still not clear whether dismissal or summary judgment would be granted.

■ On March 4, 1991, Shriners filed a reply brief to the Banks' brief. Shriners requested that if the court meant to consider the motion as one for summary judgment, that it grant a continuance for Shriners to take the depositions of "Mr. Lamborn, Mr. Hay, Mr. and Mrs. Eversole, Mr. Dickinson, appraisers, realtors, property managers, and other persons with relevant information."[1] The court did not act on this request.

---

1. Shriners did not file an *affidavit* stating that it could not "for reasons stated present by affidavit facts essential to justify [its] opposition." *See* W.R.C.P. 56(f). This is the method provided

On March 21, 1991, Shriners filed a motion for hearing on the defendants' motions. Shriners alleged that all parties had had an adequate opportunity to *brief* the defendants' motions. On April 3, 1991, Shriners filed a motion withdrawing its previous request for a hearing and requesting that the court rule on the motions based on the briefs which had been filed. The Banks claim that Shriners waived lack of notice of conversion by filing these motions. However, Shriners referred only to pending "motions to dismiss," presumably because the trial court had never responded to Shriners' request for continuance if a motion for summary judgment was contemplated. On May 30, 1991, the trial court entered its decision letter of *dismissal,* based in part on the Lamborn Affidavit.

### Inadequate Notice of Conversion

The court received nothing from Shriners but briefs with which to consider what turned out to be a motion for summary judgment. This result was not, as the Banks suggest, due to Shriners' willful failure to complete discovery or respond within the time allotted. If the record clearly showed that notice had been given that conversion was to occur, summary judgment consideration would be appropriate, whether Shriners submitted response materials or not. However, the record supports Shriners' contention that it did not respond with summary judgment materials because it was convinced by the court's failure to respond or grant a continuance that only a motion to dismiss was contemplated.

> When a party files an affidavit which a judge considers under a Rule 12(b)(6) motion, this court will treat the motion as a motion for summary judgment subject to the time requirements of Rule 56, whether or not the record demonstrates that the parties had other notice of the con-

version, *unless the record otherwise demonstrates unfair or inappropriate surprise to either party but normally for the nonmoving party.*

*Torrey v. Twiford,* 713 P.2d at 1164 (emphasis added).

The facts show that Shriners was "unfair[ly] and inappropriate[ly] surprised" when the trial court considered the Lamborn Affidavit after failing to respond to Shriners' request for clarification.

### Inadequate Time for Discovery

■ Additionally, the trial court should have granted Shriners' request for an extension of time in which to pursue discovery. This case involves claims of fraud and conspiracy. In claims of this type, the *defendants* often possess information crucial to a full factual presentation of the plaintiff's cause of action. Adequate discovery was therefore essential to Shriners' response in summary judgment posture.

In *Pace v. Hadley,* 742 P.2d 1283 (Wyo. 1987), we reversed summary judgment entered where the plaintiffs did not have adequate time to respond to a 12(b)(6) converted motion. In that case, the defendants filed their motion to dismiss, or in the alternative for summary judgment, on December 23, 1986, only 40 days after the plaintiffs had filed their complaint. The plaintiffs notified the court that insufficient discovery had occurred and that they could not as yet respond to the defendants' motion. On February 9, 1987, the trial court nevertheless entered an order converting the motion to one for summary judgment and granting the plaintiffs only 21 more days in which to file any additional affidavits in opposition to the motions. On appeal, we held that the plaintiffs had not been given adequate opportunity to respond to the motion for summary judg-

---

in Rule 56 for alerting the court of the need for a continuance to present affidavits in response to a motion for summary judgment. In the alternative, a motion for enlargement of time may also be made under W.R.C.P. 6(b). *Dudley v. East Ridge Development Co.,* 694 P.2d 113, 116 (Wyo.1985). Shriners did not comply with the formal requirements of either rule. However, we will follow those federal courts which

hold that the "functional equivalent" of a rule 56(f) affidavit is sufficient to preserve a request for continuance. *See e.g., First Chicago International v. United Exchange Co., Ltd.,* 836 F.2d 1375, 1380 (D.C.Cir.1988). Shriners' request, made in its brief in opposition to defendants' motion to dismiss, was sufficient to alert the trial court of the need to grant extra time for discovery.

ment. We reversed the entry of summary judgment and remanded to permit the parties a reasonable time to complete discovery.

Also relevant to the facts of this case is *Gay v. Wall*, 761 F.2d 175 (4th Cir.1985). In *Gay*, the plaintiff filed his civil rights complaint on March 12, 1984. On April 3, 1984, the defendants filed a motion to dismiss under Rule 12(b)(6), with accompanying affidavits. Plaintiff initiated discovery on April 6, 1984. He filed some affidavits with the court, but was unable, after requesting extra time which was denied, to complete discovery before summary judgment was entered against him. In reversing, the Fourth Circuit stated as follows:

> In this case summary judgment was granted when the plaintiff had barely begun discovery. Gay's initial interrogatories were only partially answered by the defendants. The defendants claimed that much requested discovery was privileged. While Gay filed four affidavits, he was ill-equipped to counter the defendants' affidavits because of the defendants' objections to his preliminary discovery. * * * It was the lack of a reasonable opportunity for discovery which made conversion of the Rule 12(b)(6) motion "wholly inappropriate." Because Gay was not afforded an opportunity for reasonable discovery, the district court's treatment of the motion to dismiss as a motion for summary judgment was an abuse of discretion.

*Gay*, at 177–78. *See also e.g., Whiting v. Maiolini*, 921 F.2d 5, 7 (1st Cir.1990); *Roberts v. Heim*, 130 F.R.D. 424, 429 (N.D.Cal. 1989).

The trial court's refusal to grant a continuance for further discovery, coupled with its failure to clarify the nature of the motion before it and the delay caused by the Banks' having previously sought protective orders, prevented Shriners from developing through discovery the facts needed to respond in summary judgment posture.

■ Under the circumstances of confusion and surprise involved here, neither the "automatic conversion" nor the "presumptive ten-day notice" requirement should be permitted to defeat the nonmovant's right to develop a response. Having reviewed Shriners' complaint, we cannot say that there is no "state of facts on which [Shriners] could conceivably recover." *See Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 285 (3rd Cir.1991), *cert. denied sub nom. Altran Corp. v. Ford Motor Co.,* — U.S. —, 112 S.Ct. 373, 116 L.Ed.2d 324 (1991), and cases cited therein. Therefore, adequate notice and opportunity to respond were essential. The proper action, as in *Pace*, is to remand to allow further time for Shriners to complete discovery and respond to the motion in summary judgment posture.

### Dismissal of Fraud Claims

■ The fraud claims against the Banks were dismissed for failure to plead fraud with particularity rather than for failure to state a claim. These dismissals therefore did not convert to summary judgment. *Cf.* 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1366 at p. 484 (1990) (conversion appropriate only where dismissal made under analogous Federal Rule of Civil Procedure 12(b)(6)). Therefore, we must consider them separately.

■ Wyoming Rule of Civil Procedure 9(b) provides that fraud must be pled with particularity. The rule itself does not, however, provide the penalty or remedy for failure to so plead. In *Johnson v. Aetna Casualty & Surety Co.*, 608 P.2d 1299, 1303 (Wyo.1980), we noted that courts have varied in their approach to the appropriate remedy for a Rule 9(b) violation. Courts which have taken the stricter view and either dismissed the complaint or stricken the defective count for failure to plead with particularity have nearly always allowed leave to amend. *Id.* In *Johnson*, we reversed a dismissal with prejudice of a complaint which failed to comply with Rule 9(b). We noted that the liberal amendment provisions of W.R.C.P. 15(a) make such a dismissal inappropriate unless the proposed amendment will unduly prejudice the opposing party, has not been offered in good faith, or the party seeking to amend has

had repeated opportunities to cure the defect and has failed to do so. *Johnson*, at 1303. Thus, the fraud claimant must generally be given an opportunity to amend.

While we agree with the trial court that the fraud claims as now stated are not pled with sufficient particularity, none of the factors we cited in *Johnson* as justifying dismissal with prejudice is applicable in this case. It may be that further discovery will allow Shriners to amend their complaint to state fraud with particularity. Therefore, we remand the fraud claims along with the claims dismissed under Rule 12(b)(6) to allow Shriners leave to amend.

*Conclusion*

The orders of dismissal under Rule 12(b)(6), including those claimed converted to summary judgment, are reversed, and this case is remanded to the trial court to allow for further discovery and presentation of materials by all parties. Shriners should also be allowed leave to amend its claims for fraud.