887 P.2d 927 (1994)
Wesley R. McKENNEY and Claire L. McKenney, husband and wife, Appellants (Plaintiffs),
v.
PACIFIC FIRST FEDERAL SAVINGS BANK OF TACOMA, WASHINGTON; Campbell Land Company, Inc., a Wyoming corporation d/b/a Century 21-Sun Agency; and Thomas A. Ostlund, Appellees (Defendants).
No. 92-170.
Supreme Court of Wyoming.
December 30, 1994.
Stuart S. Healy, Sheridan, for appellants.
Thomas E. Lubnau II, James L. Edwards of Stevens, Edwards & Hallock, and M. Greg Carlson of Drew & Carlson, Gillette, for appellees.
Before GOLDEN, C.J., and THOMAS, CARDINE[*], MACY, and TAYLOR, JJ.
*928 THOMAS, Justice.
The resolution of this case requires the application of our defined process for resolving motions for summary judgment in the context of claims for fraud. Wesley R. McKenney and Claire L. McKenney (McKenneys) brought this action alleging fraud in the inducement based upon a failure to disclose an alleged defect in residential property. The trial court granted the defendants' motion for summary judgment with respect to the claims of fraud and disposed of a contractual claim as a matter of law. The essential issue is whether, when confronted with the factual demonstration by Pacific First Federal Savings Bank of Tacoma, Washington (Pacific First), Campbell Land Company, Inc. d/b/a Century 21-Sun Agency (Sun Agency), Thomas A. Ostlund (Ostlund) and Ann C. Smith (Smith) to refute particular elements of the claim of fraud, the McKenneys responded with factual information to demonstrate genuine issues of material fact. A second issue is presented relating to the contractual claim. Our examination of the record and Wyoming precedent persuades us the McKenneys did fail to make the appropriate factual demonstration in light of the facts presented by Pacific First, Sun Agency, Ostlund, and Smith, and that failure foreclosed any genuine issue of material fact. We hold the trial court properly entered a partial summary judgment in favor of the defendants on the fraud claims, and we are satisfied the trial court correctly interpreted the contractual language in entering a partial summary judgment with respect to the claim of breach of contract. The partial summary judgment, which incorporated the requisite finding to make it a final order, is affirmed in all respects.
The McKenneys set forth the issues in this way:
A. Whether Summary Judgment against the Appellants was proper under the two-part test of Rule 56(c), W.R.C.P.
1. Did the District Court err by making findings of fact on the contract and fraud claims which should have been left for jury determination?
2. Are the factual findings and legal conclusions supported by law?
Pacific First makes a separate statement of those issues:
I. Whether the trial court properly granted partial summary judgment on the issue of fraud because Appellant failed to prove a prima facie case.
II. Whether the trial court properly interpreted the specific language of the Specific Performance Contract (Residential).
Before pursuing the factual background of this case in the context of the allegations of the complaint; the refutation of those allegations submitted by Pacific First, Sun Agency, Ostlund, and Smith in support of their respective motions for summary judgment; and the factual information submitted by the McKenneys in opposition to that factual showing, it is appropriate to review the elements of the McKenneys' fraud claims and the process for summary judgment.
The essential elements of the McKenneys' claims of fraud determine the materiality of any disputed fact in light of whether it will establish, or refute, one of those essential elements. In Johnson v. Soulis, 542 P.2d 867, 872 (Wyo.1975), we said:
In Wyoming the elements of an action for fraud have been identified as a false representation by a defendant of material facts which are relied upon by a plaintiff to his damage. Davis v. Schiess, Wyo., 417 P.2d 19 (1966). Earlier this Court developed the concept that the asserted false representation must be one which is made to induce action, and that it must be reasonably believed by the plaintiff to be true. First National Bank v. Swan, 3 Wyo. 356, 23 P. 743 (1890).
These elements of the cause of action for fraud have consistently been invoked by this court. E.g., Lavoie v. Safecare Health Serv., Inc., 840 P.2d 239 (Wyo.1992); Britton v. Bill Anselmi Pontiac-Buick-GMC, Inc., 786 P.2d 855 (Wyo.1990); Rocky Mountain Helicopters, Inc. v. Air Freight, Inc., 773 P.2d 911 (Wyo.1989); Garner v. Hickman, 709 P.2d 407 (Wyo.1985); Duffy v. Brown, 708 P.2d 433 (Wyo.1985).
With respect to claims for fraud, we have applied rather literally the requirements of WYO.R.CIV.P. 9(b) that "[i]n all averments *929 of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Shriners Hospitals for Crippled Children, Inc. v. First Sec. Bank of Utah, N.A., 835 P.2d 350 (Wyo.1992); Johnson v. Aetna Cas. Ins. Co. of Hartford, Conn., 608 P.2d 1299 (Wyo.1980), appeal dismissed, cert. denied, 454 U.S. 1118, 102 S.Ct. 961, 71 L.Ed.2d 105 (1981), reh'g denied, 455 U.S. 1039, 102 S.Ct. 1743, 72 L.Ed.2d 157 (1982). Furthermore, our rule is that fraud is to be established by clear, unequivocal, and convincing evidence, and it will never be presumed. Duffy; Kincheloe v. Milatzo, 678 P.2d 855 (Wyo.1984). These same concepts have been applied in addressing motions for summary judgment in the context of claims of fraud. Laird v. Laird, 597 P.2d 463 (Wyo. 1979). Assuming the pleadings allege fraud with sufficient particularity, and the parties accused of fraud, in support of a motion for summary judgment, have presented facts that refute those allegations of fraud, the party relying upon the fraud claim then must demonstrate the existence of genuine issues of material fact by clear, unequivocal, and convincing evidence presented in opposition to the motion for summary judgment. Albrecht v. Zwaanshoek Holding En Financiering, B.V., 762 P.2d 1174 (Wyo.1988); Duffy.
It is against this background of substantive rules as applied in the summary judgment process that we analyze the facts of this case. The general background involves the desire of the McKenneys to purchase a house located at 811 Ventura Street in Gillette, which was owned by Pacific First. Pacific First had listed the property for sale with Sun Agency. Ostlund was the licensed broker for Sun Agency, and Smith was a selling agent for Sun Agency. The McKenneys submitted an offer on that property through Smith. Prior to making the offer, the McKenneys had been approved for a Veterans Administration insured loan with respect to their financial capabilities.
The problems relate to a retaining wall on the north side of the property. A survey in the record indicates it was primarily situated on the property to the north, but at the eastern end it gravitated across the property line of the 811 Ventura property. The retaining wall was leaning outward. The essence of the McKenneys' claims is that the property could not be financed with a Veterans Administration (VA) or Federal Housing Administration (FHA) insured loan because of this defect. They assert Smith, Ostlund, Sun Agency, and Pacific First were aware of the defect and its effect on insured financing, but failed to disclose those matters prior to obtaining an Offer, Acceptance & Receipt submitted by the McKenneys on November 11, 1988.
More specifically, the McKenneys alleged in the fraud count of their complaint that they made the offer to purchase "expressly conditioned upon Plaintiffs' ability to obtain financing supported by the Department of Urban Development/Veterans Affairs loan guarantees * * *." They alleged that offer was amended on November 23, 1988, and there was a further amendment by an agreement executed on January 20, 1989, providing an extension of the closing date to January 31, 1989. The complaint alleged knowledge on the part of all of the adverse parties of the fact that a concrete retaining wall separating the 811 Ventura Street property from the adjacent property to the north was "in a defective condition and represented an immediate landslide danger to the residence and its occupants." The complaint also alleged all of the defendants knew, or had reason to know, the property would not qualify for either VA or FHA financing in the absence of a qualified engineering report concerning the retaining wall and the completion of any necessary repairs recommended by such a report. Specificity was added by asserting the defendants knew these latter facts because of the failure of the property to qualify for FHA financing in October of 1988 due to the defective condition of the retaining wall. The McKenneys alleged that the defendants intentionally concealed this information in order to induce the sale of the property at an inflated price. The complaint then alleged that the defendants, individually or as agent for some other defendant, with knowledge of the agent's principal, intentionally or recklessly made certain representations as to the soundness and safety of the property, its market value, and the *930 ability of the plaintiffs to qualify for financial assistance from an agency of the U.S. Department of Housing and Urban Development, which were untrue and known to be untrue by each of the defendants.
The McKenneys further allege they reasonably relied upon the misrepresentations of fact, and they were reasonably deceived by the concealment of other material information. The complaint then alleged that, about January 25, 1989, the McKenneys learned of the condition of the retaining wall and its significance by virtue of an instrument entitled "Endorsement to Certificate of Reasonable Value" issued on that date on behalf of the Administrator of Veteran's Affairs. This document specified the additional requirement for a statement from a professional engineer certifying the safety and adequacy of the retaining wall as a condition to loan guarantees from the VA.
The McKenneys alleged that, after January 25, 1989, Ostlund and Smith, as agents for Sun Agency, induced them to enter into a second written agreement for the purchase of the subject property and secured an additional cash deposit of $500 by representing to the McKenneys that the problem with the retaining wall noted by the VA was of no major structural significance; the wall was located on adjacent property and would have to be repaired by the adjacent landowners at their cost; and, if not repaired, it would be taken care of by Pacific First at no expense to McKenneys. The McKenneys then alleged the representation was made that, as a result of the repairs, the property would qualify for VA financing and, if not, it would qualify for FHA financing. The complaint alleged the property did not qualify for VA or FHA financing and, in the meantime, the McKenneys were required to vacate their rental premises and move into the 811 Ventura property. They alleged, in April of 1989, they received notification from First Guaranty Savings and Loan (First Guaranty) that their application for an FHA insured mortgage loan was being denied because of poor credit ratings and insufficient cash reserves. The McKenneys alleged no other alternative financing was available because the property failed to qualify for VA or FHA insured financing. The McKenneys alleged damage for loss of the opportunity to make a favorable purchase and the failure to have their deposits returned and compensatory damages in the amount of $3,000 for improvements they made to the property, as well as damages for mental suffering, legal fees and costs, and punitive damages.
We commend the approach taken by the defendants in pursuing summary judgment. They carefully analyzed the claims for fraud and attacked specific elements by reference to the record and the articulation of facts by affidavit. This methodology precisely comports with the analysis of material facts found in Soulis. The several defendants filed individual motions for summary judgment which are somewhat different in terms of the premise for the motion, but each of them relies upon the arguments of the others.
The first motion for summary judgment was filed by Smith. Smith urged the McKenneys did not rely upon any of her representations, and they suffered no damage as the result of any representations she may have made. Her motion focused upon the allegation by the McKenneys in their second cause of action for negligence that she made:
[M]aterial misrepresentations of fact as to the character and quality of the property sold by them [Defendants] to the Plaintiffs and/or by inducing the sales contract(s) with Defendant Pacific First Federal by negligently representing the ability of the Plaintiffs to qualify for VA financing in accordance with their credit and the structural soundness of the property * * *,
and on the allegation of the third cause of action that:
[T]he Defendants knew, or should have known, that the retaining wall located on the property line was defective, that it posed an imminent danger to the real estate and structural improvements and persons located upon 811 Ventura, that the value of such property was greatly diminished by the danger presented by this retaining wall, that the Plaintiffs could not qualify for VA, FHA or conventional financing in view of the structural defect of *931 this wall, and that neither the adjacent land owner, the City of Gillette, nor the Seller, Pacific First Federal would assume the financial responsibility for correcting these defects to the satisfaction of the government agencies and lending institutions. Each of these facts was material to the formation of the contract between the Plaintiffs and Defendant Pacific First Federal. Each of the Defendants intentionally concealed or intentionally misrepresented one or more of these material facts with the purpose of inducing the purchase of this property by Plaintiffs at a unconscionable and unrealistic price. The Plaintiffs reasonably relied upon these misrepresentations and were otherwise innocently deceived by the concealment of other material facts to their corresponding injury.
The second motion for summary judgment was filed on behalf of Sun Agency and Ostlund. The argument on this motion describes the essence of the McKenneys' complaint as amounting to an allegation the defendant misrepresented to them the property would qualify for federally insured financing, notwithstanding the condition of the retaining wall. These defendants contended, contrary to the allegations of the complaint, they had demonstrated, through affidavits, that the property did qualify for FHA financing without any qualified engineering report because the wall was on the adjacent property. They contended this was the information available to Ostlund and the other defendants at the time the statements about which the McKenneys complain were made, and the statements were not false or misleading. They argued there was no factual dispute about what was said by the several defendants, and those statements were true based on the information available at the time the representations were made. They also urged the refusal of the loan to McKenneys was premised upon their failure to qualify financially and had nothing at all to do with the retaining wall. Sun Agency and Ostlund adopted the arguments of Smith and Pacific First relative to the damage issues presented.
Pacific First was the last defendant to move for summary judgment. Pacific First contended there was no transaction through which the property was purchased and, further, in accordance with the arguments of Smith, the elements of the claim for fraud were not established. In addition, Pacific First relied upon the fact the contract was conditioned upon financing being obtained, and it would become null and void if the loan could not be obtained.
Following a hearing at which the parties appeared and argued their respective positions, the trial court ruled in favor of the McKenneys on their contract claim for the return of their earnest money deposit, and that ruling is appealed only because the court did not award attorney fees. The trial court dismissed the McKenneys' claim for fraud and dismissed Pacific First's claim for rent. The court retained for trial the issues with respect to negligence on the part of Smith and Ostlund.
In the course of the Partial Summary Judgment, the trial court reviewed the chronology of the case and found, among other things:
9. There is absolutely no evidence to show that defendants Ostlund and Smith knew that a concrete retaining wall north of the property "was in a defective condition and represented an immediate landslide danger to the residence and its occupants" as alleged in plaintiffs' amended complaint.
* * * * * *
13. There is no evidence that the defendants intentionally concealed the FHA Conditional Commitment issued October 3, 1988, in order to induce the sale of the property to the plaintiffs.
14. There is no evidence that the defendants intentionally or recklessly made various representations as to the soundness and safety of the property, its market value, and the ability of the plaintiffs to qualify for financial assistance from an agency of the U.S. Department of Housing and Urban Development.
* * * * * *
23. Representations by the defendants to the plaintiffs to induce the plaintiffs to enter into the second offer, acceptance and *932 receipt were not known to be false by the defendants and in fact were thought to be true at the time the representations were made.
In essence, the trial court found and held the misrepresentations claimed by the McKenneys were not known to be false when they were made, or they were not false at all, and ruled no cause of action could be maintained for fraud.
The following facts are demonstrated by the documents in the record. On October 6, 1988, a letter from First Guaranty was addressed to Ostlund which enclosed a copy of an FHA conditional commitment directed to another client of Sun Agency which alluded to a requirement for an "[e]ngineer's report on present condition of the retaining wall & who is responsible to fix the wall in the future." That conditional commitment related to 811 Ventura in Gillette. On November 11, 1988, the McKenneys submitted an Offer, Acceptance & Receipt to Sun Agency relating to this property. There was a Counter Offer by Pacific First on November 19, 1988, which encompassed a disclaimer, dated November 23, 1988, signed only by Claire McKenney. The thrust of the disclaimer is that the property was sold "as is," without representations or warranties of any kind, and the buyers had a reasonable opportunity to inspect and investigate the property and the improvements and were not relying on any representation by seller or its agents.
On November 23, 1988, the critical dates for closing the transaction were extended. That was followed by a VA certificate of reasonable value addressed to McKenneys on December 14, 1988, which set the value at $59,000. Then, on January 13, 1989, Provident Federal Savings & Loan Association of Casper (Provident Federal) made its loan commitment to the McKenneys in the amount of $46,460. However, on January 25, 1989, the VA issued an Endorsement to Certificate of Reasonable Value, which alluded to a letter from a professional engineer at Professional Consulting Associates. That letter contained the following relating to the retaining wall:
2. North Side

d. There is a concrete retaining wall on or near the north property line. The top of this wall is leaning out (to the south). There are large steel plates with large bolts through them intermittently along the length of the wall (suggesting a "dead man" type support). There are several cracks in the wall.
The letter continued at a later point with this language:
[T]here is one immediate area of structural concern. That is the retaining wall along the north property line. I have no direct knowledge of where the property line is, nor on which lot the retaining wall may be. Regardless, there is considerable leaning in the wall and it is of such a degree to cause me to doubt its structural integrity.
Even if this retaining wall is not on this property, its potential failure could significantly impact this home, and endanger the health, safety and welfare of the public. All affected parties and the public should be made aware of this condition.
On February 22, 1989, a new Offer, Acceptance & Receipt was submitted from the McKenneys to Sun Agency. That document specifically addressed the retaining wall and provided that it was:
[C]onditioned upon purchaser obtaining a VA loan to be secured by the property in the amount of $45,500 for 30 years. Purchaser to apply said loan as soon as the retaining wall is repaired. If said loan cannot be obtained, this contract shall become null and void and all earnest monies hereby receipted for shall be returned to Purchasers without recourse.
On February 27, 1989, Claire McKenney sent a letter to Provident Federal asking it to forward the VA file to First Guaranty in Gillette. The letter stated it would take a long time to attend to the retaining wall, and Mr. Campbell of First Guaranty had indicated he could close within a little more than a month. Provident Federal then rejected the McKenneys' loan application on March 1, 1989, specifically alluding to the structural engineer's report stating the "retaining wall in back of property appears to be structurally unsound" and "must be repaired."
*933 On April 3, 1989, the McKenneys' application to First Guaranty was rejected. The reasons specified were delinquent past or present credit obligations with others and insufficient funds to close without borrowing, insufficient cash reserves, and insufficient monthly cash residual after debt payment. Previously, on March 2, 1989, the Professional Consulting Associates had sent to Smith a copy of a letter of demand upon the owner of the adjacent property that the retaining wall at 3407 Crestline was in need of repair. The record also contains a survey showing the retaining wall is primarily on the adjacent property but crosses at one end so it is, in part, on the 811 Ventura property.
In addition, the record encompasses an affidavit by James Campbell, who represented First Guaranty, in which he stated he had processed a loan application on that property prior to the time the McKenneys applied for a loan. He stated the property qualified for FHA financing without a qualified engineering report concerning the retaining wall between 811 Ventura and 3407 Crestline, provided ownership of the retaining wall could be determined, and the retaining wall was not part of the 811 Ventura property. Mr. Campbell stated he was aware of the condition of the wall at the time he processed the prior loan application, upon which the McKenneys relied to establish knowledge of the defective wall, and he was aware the City of Gillette had a procedure for correcting the problem with the wall. He said the wall problem was not an impediment to obtaining financing on 811 Ventura because the wall was located on the adjacent property. He then stated the McKenneys failed to qualify for a loan for reasons not related to the retaining wall.
In addition, Ostlund filed an affidavit stating he was able to determine the retaining wall belonged to the property at 3407 Crestline, and this determination was based on a review of documents in his file including a diagram attached to his affidavit. An affidavit from the chief building inspector for the city stated his familiarity with the retaining wall and the fact the city had adopted a code for abatement of dangerous buildings. He averred the retaining wall was subject to the code, and he caused letters to be sent to the owner of 3407 Crestline advising of the problems and the need to have the wall repaired. He said, under the code, the wall posed a danger to the 3407 Crestline property, but it did not pose a danger to the 811 Ventura property. He also stated there were procedures for repair of the retaining wall in event the homeowner failed to make the necessary repairs. Those procedures had been available since February 6, 1989.
This case presents a classic example of the object of a motion for summary judgment, which is to separate what is formal or pretended in denial or averment from what is genuine and substantial, so that only the latter may subject a suitor to the burden of trial. Reno Livestock Corp. v. Sun Oil Co. (Delaware), 638 P.2d 147 (Wyo.1981); Siebert v. Fowler, 637 P.2d 255 (Wyo.1981); Weaver v. Blue Cross-Blue Shield of Wyoming, 609 P.2d 984 (Wyo.1980); Vipont Mining Co. v. Uranium Research & Dev. Co., 376 P.2d 868 (Wyo.1962). Even affording the McKenneys the most generous view of the information in the record, and the benefit of any appropriate inferences that could be drawn, it is clear the allegations of the facts constituting fraud in their complaint are refuted by the information in the record and the factual showing by the defendants. There is no demonstration by the McKenneys of any other facts giving rise to any genuine issue of material fact as to fraud. They presented no evidence to the contrary other than their argumentative and counsel-assisted speculations which were not supported by any facts.
At the time of the submission of the Offer, Acceptance & Receipt and the acceptance of Counter Offer by the McKenneys, the information available to Sun Agency was that a letter had been sent from First Guaranty addressed to Ostlund which enclosed a copy of an FHA conditional commitment. That conditional commitment alluded to a requirement for an "[e]ngineer's report on present condition of the retaining wall & who is responsible to fix the wall in the future." As the trial court correctly noted, that is far different from knowledge on the part of the adverse parties that the concrete retaining wall "was in a defective condition and represented *934 an immediate landslide danger to the residence and its occupants." Neither does it suffice to inform the defendants the property would not qualify for either VA or FHA financing in the absence of a qualified engineering report and the completion of any necessary repairs.
While it is true the McKenneys were not informed of the correspondence from First Guaranty, that failure to inform does not constitute an intentional withholding of the information described in the McKenneys' complaint. A fair understanding of the record leads to the conclusion the allegations in the complaint were premised upon information developed after the initial offer to purchase and could not have been related to any inducement to enter into the transaction so far as McKenneys were concerned nor could it have been relied upon by them.
The first transaction never was consummated by the parties. In February, after additional information had been developed with respect to the retaining wall, a new Offer, Acceptance & Receipt (Specific Performance Contract) (Residential) was entered into between the McKenneys and Pacific First. By that time, the impact of the professional engineer's report with respect to the retaining wall was known, and it was contemplated by language in the contract that conditioned the transaction upon the purchaser obtaining a VA insured loan to be applied as soon as the wall was repaired. It is clear the initial $500 in earnest money was credited toward the $1,000 earnest money deposit required in connection with this new agreement. The agreement did provide that, in the event of default or breach, the defaulting or breaching party should pay reasonable attorney fees and other expenses incurred by the non-breaching or non-defaulting party in enforcing the agreement.
The McKenneys occupied the home at 811 Ventura, and it appears they were there from late March or early April of 1989 until August of 1989. They contended they had effected $3,000 worth of improvements to the property during the time they lived there. They refused to pay any rent for their occupancy of the premises. When it became apparent the sale of the home would not be completed, Pacific First directed Sun Agency to not return the $1,000 earnest money because of the dispute over rent and the claim by the McKenneys of their right to recover for improvements to the property. There was no agreement by Pacific First to pay for the improvements, and the McKenneys never executed any lease requiring payment of rent. The effect of the trial court's determination on those issues was that, in the absence of an agreement, there was no right for either party to recover from the other.
The agreement under which the earnest money was paid provided it should be null and void upon the failure of the financing arrangements. The trial court ordered the purchase money should be returned and correctly construed the contract in determining there had been no breach of the agreement because it became null and void. For that reason, no attorney fees are recoverable by the McKenneys.
While the McKenneys endeavor to relate information that became available to the defendants at a later time to the inception of this transaction, the substantive rules relating to summary judgment do not yield to obfuscation or argument. The McKenneys were unable to articulate any facts that would demonstrate an intentional misstatement or an intentional withholding of information material in inducing them to enter into the first transaction. By the time the subsequent contract was made, the McKenneys could not have relied upon misinformation with respect to the retaining wall because they were aware of the same facts Sun Agency knew.
Furthermore, because of the very nature of this transaction, the McKenneys did not incur damages based upon the claimed fraud arising out of misstatements of fact or withholding of information. While they appear to contend that, with the correct information, they would have been able to purchase the property at a reduced price, there was nothing to suggest the claimed fraud resulted in damage to the McKenneys. They never did incur any financial obligation with respect to this transaction, and their only possible loss was with respect to the time *935 and effort devoted to obtaining financing, which would be involved in the transaction in any event.
While the McKenneys assert consequential damages in the form of physical inconvenience and mental suffering because of the conduct of the defendants, the standard rule is that those are not appropriate damages arising out of the claim for fraud in connection with a contract even though there may have been some improper inducement. Toho Bussan Kaisha, Ltd. v. American President Lines, Ltd., 265 F.2d 418 (2d Cir.1959); Kantor v. Comet Press Books Corp., 187 F.Supp. 321 (S.D.N.Y.1960); Newman v. Smith, 77 Cal. 22, 18 P. 791 (1888); Chandler v. Ziegler, 88 Colo. 1, 291 P. 822 (1930); Ellis v. Crockett, 51 Haw. 45, 86, 451 P.2d 814 (1969); Harsche v. Czyz, 157 Neb. 699, 61 N.W.2d 265 (1953); Aaron v. Hampton Motors, Inc., 240 S.C. 26, 124 S.E.2d 585 (1962); Hudson & Hudson Realtors v. Savage, 545 S.W.2d 863 (Tex.Civ.App.1976). The district court did not invoke the failure to allege or provide evidence of damage as a ground for the summary judgment, but it serves as an appropriate additional basis for affirming the partial summary judgment entered.
In summary, we agree with the trial court there was no genuine issue of material fact with respect to the element of false representations by the defendants. The record is clear the representations made either were true or believed by the defendants to be true at the time they were made. In addition, there was no damage to the McKenneys arising out of the inability to complete the purchase of this house. The trial court correctly construed the contract as being null and void upon failure of the condition relating to financing.
The Partial Summary Judgment entered in the trial court is affirmed in all respects.
NOTES
[*] Retired July 6, 1994.